IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WALGREEN CO., an Illinois corporation, | ) | Civil Action No. 08-cv-05694 |
| | ) | |
| Plaintiff, | ) | Judge G. W. Lindberg |
| | ) | Magistrate Judge A. Keys |
| v. | ) | |
| | ) | |
| WYETH, a Delaware corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

DORSEY & WHITNEY LLP
Bruce R. Ewing (*pro hac vice*)
Sandra Edelman (*pro hac vice*)
250 Park Avenue
New York, New York 10177
(212) 415-9200

Peter A. Tomaras (No. 6180423)
WILDMAN, HARROLD, ALLEN &
DIXON LLP
225 West Wacker Drive, Suite 2800
Chicago, Illinois 60606-1229
(312) 201-2000

Attorneys for Defendant Wyeth

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

INDEX OF CASES.................................................................................................... vii

INTRODUCTION ...................................................................................................... 1

ARGUMENT

POINT I

WALGREEN'S HAS OFFERED AN INCOMPLETE AND MISLEADING DESCRIPTION
OF THE STANDARDS GOVERNING THIS MOTION AND THIS PROCEEDING ................ 2

    A.   The Summary Judgment Standard Under Fed. R. Civ. P. 56 ..................................... 2

    B.   The Standard of Review Under 15 U.S.C. § 1071(b)(1) ........................................... 3

    C.   The Standard Governing the Assessment of Likely Confusion.................................. 4

POINT II

WALGREEN'S IS NOT ENTITLED TO SUMMARY JUDGMENT ......................................... 6

    A.   Walgreen's Has Explicitly or Implicitly
           Conceded That Four *DuPont* Factors Favor Wyeth ..................................... 6

    B.   The ALAVERT and WAL-VERT Marks Are Very Similar ...................................... 7

    C.   Walgreen's Arguments Concerning Actual Confusion Are Misleading .................. 11

    D.   Walgreen's Has Acted in Bad Faith........................................................................ 16

    E.   Consumers Do Not Exercise a High Degree of Care in
           Purchasing the Parties' Products........................................................................... 17

    F.   Walgreen's Remaining Arguments Fail.................................................................. 19

CONCLUSION........................................................................................................ 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*AHP Subsidiary Holding Co. v. Stuart Hale Co.,*
1 F.3d 611 (7th Cir. 1993) ...................................................................................15, 16

*Allen Bros., Inc. v. AB Foods, LLC,*
No. 06 C 1269, 2008 WL 345600 (N.D. Ill. Feb. 6, 2008) .....................................13

*Allentown Mack Sales & Serv., Inc. v. NLRB,*
522 U.S. 359 (1998) .....................................................................................................4

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) .....................................................................................................3

*Autozone, Inc. v. Strick,*
543 F.3d 923 (7th Cir. 2008) .........................................................................3, 4, 5, 16

*Ava Enterprises, Inc. v. Audio Boss USA, Inc.,*
2006 WL 173465 (T.T.A.B. Jan. 12, 2006) ..............................................................14

*Bandag, Inc. v. Al Bolser's Tire Stores, Inc.,*
750 F.2d 903 (Fed. Cir. 1984) ..................................................................................16

*Barbecue Marx, Inc. v. 551 Ogden, Inc.,*
235 F.3d 1041 (7th Cir. 2000) ..................................................................................13

*Blansett Pharmacal Co., Inc. v. Carmrick Labs., Inc.,*
25 U.S.P.Q.2d 1473 (T.T.A.B. 1992) ..........................................................................9

*Bose Corp. v. QSC Audio Products, Inc.,*
293 F.3d 1367 (Fed. Cir. 2002) .....................................................................5, 14, 19

*Bridgestone/Firestone of North American Tire, LLC v. Silverstone Berhad,*
2003 WL 1559659 (T.T.A.B. March 21, 2003) ........................................................11

*Brookfield Comms., Inc. v. West Coast Ent. Corp.,*
174 F.3d 1036 (9th Cir. 1999) ..................................................................................11

*CAE, Inc. v. Clean Air Engineering, Inc.,*
267 F.3d 660 (7th Cir. 2001) .........................................................................3, 4, 11

*Century 21 Real Estate Corp. v. Century Life of America,*
970 F.2d 874 (Fed. Cir. 1992)......................................................................................8

*Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.*,
  659 F.2d 695 (5th Cir. 1981) .................................................................................12

*Computer Care v. Service Systems Enterprises, Inc.*,
  982 F.2d 1063 (7th Cir. 1992) ...............................................................................18

*Consol. Edison Co. v. NLRB*,
  305 U.S. 197 (1938).................................................................................................3

*Covia Partnership v. Northwest Airlines, Inc.*,
  No. 93 C 3008, 1997 WL 652324 (N.D. Ill. Oct. 7, 1997) .....................................13

*Crown Radio Corp. v. Soundscriber Corp.*,
  506 F.2d 1392 (C.C.P.A. 1974) ...............................................................................8

*Cunningham v. Laser Golf Corp.*,
  222 F.3d 943 (Fed. Cir. 2000).........................................................................6, 20

*DC Comics v. Pan Am. Grain Mfg. Co., Inc.*,
  77 U.S.P.Q.2d 1220 (T.T.A.B. 2005) ....................................................................16

*Electronic Design & Sales, Inc. v. Electronic Data Systems Corp.*,
  954 F.2d 713 (Fed. Cir. 1992)...............................................................................18

*Eli Lilly & Co. v. Natural Answers, Inc.*,
  233 F.3d 456 (7th Cir. 2000) ....................................................................8, 16, 19

*First Int'l Servs. Corp. v. Chuckles, Inc.*,
  5 U.S.P.Q.2d 1628 (T.T.A.B. 1987) ......................................................................17

*First National Bank in Sioux Falls v. First National Bank South Dakota SPC, Inc.*,
  No. Civ. 06-4101, 2008 WL 895931 (D. S.D. March 31, 2008) ...........................12

*General Foods Corp. v. Wisconsin Bottling, Inc.*,
  190 U.S.P.Q. 43 (T.T.A.B. 1976) .............................................................................7

*Giant Food, Inc. v. Nation's Foodservice, Inc.*,
  710 F.2d 1565 (Fed. Cir. 1983)..............................................................................11

*Han Beauty, Inc. v. Alberto-Culver Co.*,
  236 F.3d 1333 (Fed. Cir. 2001)................................................................................5

*In re E.I. DuPont de Nemours & Co.*,
  476 F.2d 1357 (C.C.P.A. 1973) .......................................................................*passim*

*In re Pellerin Milnor Corp.*,
  221 U.S.P.Q. 558 (T.T.A.B. 1983) ........................................................................18

*Infinity Broadcasting Corp. v. Greater Boston Radio, II, Inc.*,
  Civ. A. No. 93-11161-WF, 1993 WL 343679 (D. Mass. Aug. 13, 1993) ..............................10

*James Burrough, Ltd. v. Sign of Beefeater, Inc.*,
  540 F.2d 266 (7th Cir. 1976) ...........................................................................14

*Kenner Parker Toys, Inc. v. Rose Art Indus., Inc.*,
  963 F.2d 350 (Fed. Cir. 1992)........................................................................6, 8

*Kimberly-Clark Corp. v. H. Douglas Enterprises, Inc.*,
  774 F.2d 1144 (Fed. Cir. 1985)......................................................................6, 8

*Libman Co. v. Vining Industries, Inc.*,
  69 F.3d 1360 (7th Cir. 1996) .........................................................................13

*Magnaflux Corp. v. Sonoflux Corp.*,
  231 F.2d 669 (C.C.P.A. 1956) .......................................................................18

*Master Builders, Inc. v. Polymerica, Inc.*,
  2004 WL 407353 (T.T.A.B. Feb. 24, 2004) ...................................................13

*McGraw-Edison Co. v. Walt Disney Prods., Inc.*,
  787 F.2d 1163 (7th Cir. 1986) ........................................................7, 11, 15, 17

*National Cable Television Association, Inc. v. American Cinema Editors, Inc.*,
  937 F.2d 1572 (Fed. Cir. 1991)........................................................................7

*Northam Warren Corp. v. Universal Cosmetic Co.*,
  18 F.2d 774 (7th Cir. 1927) ...........................................................................17

*Northwest Bank Minnesota, N.A. v. Diaz*,
  No. 96 C 5335, 1998 WL 30677 (N.D. Ill. Jan. 21, 1998) .................................3

*Penguin Books, Ltd. v. Eberhard*,
  48 U.S.P.Q.2d 1280 (T.T.A.B. 1998) ............................................................20

*Perfumebay.com, Inc. v. eBay, Inc.*,
  506 F.3d 1165 (9th Cir. 2007) .......................................................................11

*Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*,
  657 F.2d 482 (1st Cir. 1981).........................................................................13

*Planet Hollywood (Region IV), Inc. v. Hollywood Casino Corp.*,
  80 F. Supp. 2d 815 (N.D. Ill. 1999) ..............................................................13

*Precision Foods, Inc. v. Major Prods. Co.*,
  2001 WL 1131865 (T.T.A.B. Sep't 20, 2001), *aff'd* 49 Fed. Appx. 308 (Fed. Cir.
  2002) ...............................................................................................18

*Reed-Union Corp. v. Turtle Wax, Inc.,*
    77 F.3d 909 (7th Cir. 1996) ..................................................................................................15

*Rock-A-Bye Baby, Inc. v. Dex Prods., Inc.,*
    867 F.Supp. 703 (N.D. Ill. 1994) .............................................................................................4

*Roger & Gallet S.A. v. Venice Trading Co.,*
    1 U.S.P.Q.2d 1829 (T.T.A.B. 1986) .......................................................................................17

*Roulo v. Russ Berrie & Co.,*
    886 F.2d 931 (7th Cir. 1989) ................................................................................................11

*S Industries, Inc. v. JL Audio, Inc.,*
    29 F. Supp. 2d 878 (N.D. Ill. 1998) ......................................................................................18

*Simon & Schuster, Inc. v. Dove Audio, Inc.,*
    970 F. Supp. 279 (S.D.N.Y. 1997)........................................................................................15

*Solar Electronics, Inc. v. Tandy Corp.,*
    No. 86 C 10054, 1987 WL 28294 (N.D. Ill. Dec. 16, 1987) ..................................................15

*Sparknet Comms., L.P. v. Bonneville Int'l Corp.,*
    386 F. Supp. 2d 965 (N.D. Ill. 2005) ...................................................................................13

*Specialty Brands, Inc. v. Coffee Bean Distributors, Inc.,*
    748 F.2d 669 (Fed. Cir. 1984).................................................................................4, 6, 7, 19

*Team Air Express, Inc. v. Alliance Shippers, Inc.,*
    2007 WL 4438620 (T.T.A.B. Dec. 11, 2007)....................................................................14, 15

*Top Tobacco, L.P. v. North Atlantic Operating Co.,*
    No. 06 C 950, 2007 WL 118527 (N.D. Ill.) *aff'd,* 509 F.3d 380 (7th Cir. 2007) ....................13

*Toro Co. v. Grassmasters, Inc.,*
    2003 WL 255724 (T.T.A.B. Feb. 4, 2003) ............................................................................13

*Trilink Saw Chain, LLC v. Blount, Inc.,*
    583 F.Supp.2d 1293 (N.D. Ga. 2008) .....................................................................................9

*Ty, Inc. v. Jones Group, Inc.,*
    237 F.3d 891 (7th Cir. 2001) .................................................................................................5

*Union Carbide Corp. v. Ever-Ready, Inc.,*
    531 F.2d 366 (7th Cir. 1976) ...............................................................................................14

*Victoria's Secret Stores Brand Mgt., Inc. v. Sexy Hair Concepts, LLC,*
    No. 07 Civ. 5804 (GEL), 2009 WL 959775 (S.D.N.Y. April 8, 2009) .....................................5

*WMH Tool Group, Inc. v. Woodstock Int'l, Inc.,*
    No. 07 CV 3885, 2009 WL 971425 (N.D. Ill. April 8, 2009) ...................................................3

*Wynn v. U.S. Patent & Trademark Office,*
    185 F. Supp. 2d 785 (E.D. Mich. 2002)...................................................................................9


**STATUTES**

15 U.S.C. § 1052(d) ..................................................................................................................4

15 U.S.C. § 1071(b) ...........................................................................................................2, 3, 5


**RULES**

Fed. R. Civ. P. 56 .....................................................................................................................2

Local Civil Rule 56.1(b)(3)........................................................................................................2


**OTHER AUTHORITIES**

R. Butters, "Trademarks and Other Proprietary Terms," *Dimensions of Forensic*
    *Linguistics* (2008) ...........................................................................................................10

S. Diamond, "Reference Guide on Survey Research," *Reference Manual on Scientific*
    *Evidence*, Federal Judicial Center......................................................................................15

## INDEX OF CASES APPENDED TO OPPOSITION BRIEF

| | |
|---|---|
| Exhibit A | *Northwest Bank Minnesota, N.A. v. Diaz*, No. 96 C 5335, 1998 WL 30677 (N.D. Ill. Jan. 21, 1998) |
| Exhibit B | *WMH Tool Group, Inc. v. Woodstock Int'l, Inc.*, No. 07 CV 3885, 2009 WL 971425 (N.D. Ill. April 8, 2009) |
| Exhibit C | *Victoria's Secret Stores Brand Mgt., Inc. v. Sexy Hair Concepts, LLC*, No. 07 Civ. 5804 (GEL), 2009 WL 959775 (S.D.N.Y. April 8, 2009) |
| Exhibit D | *General Foods Corp. v. Wisconsin Bottling, Inc.*, 190 U.S.P.Q. 43 (T.T.A.B. 1976) |
| Exhibit E | *Blansett Pharmacal Co., Inc. v. Carmrick Labs., Inc.*, 25 U.S.P.Q.2d 1473 (T.T.A.B. 1992) |
| Exhibit F | *Infinity Broadcasting Corp. v. Greater Boston Radio, II, Inc.*, Civ. A. No. 93-11161-WF, 1993 WL 343679 (D. Mass. Aug. 13, 1993) |
| Exhibit G | *Bridgestone/ Firestone of North American Tire, LLC v. Silverstone Berhad*, 2003 WL 1559659 (T.T.A.B. March 21, 2003) |
| Exhibit H | *First National Bank in Sioux Falls v. First National Bank South Dakota SPC, Inc.*, No. Civ. 06-4101, 2008 WL 895931 (D. S.D. March 31, 2008) |
| Exhibit I | *Covia Partnership v. Northwest Airlines, Inc.*, No. 93 C 3008, 1997 WL 652324 (N.D. Ill. Oct. 7, 1997) |
| Exhibit J | *Top Tobacco, L.P. v. North Atlantic Operating Co.*, No. 06 C 950, 2007 WL 118527 (N.D. Ill.) |
| Exhibit K | *Allen Bros., Inc. v. AB Foods, LLC*, No. 06 C 1269, 2008 WL 345600 (N.D. Ill. Feb. 6, 2008) |
| Exhibit L | *Master Builders, Inc. v. Polymerica, Inc.*, 2004 WL 407353 (T.T.A.B. Feb. 24, 2004) |
| Exhibit M | *Toro Co. v. Grassmasters, Inc.*, 2003 WL 255724 (T.T.A.B. Feb. 4, 2003) |
| Exhibit N | *Team Air Express, Inc. v. Alliance Shippers, Inc.*, 2007 WL 4438620 (T.T.A.B. Dec. 11, 2007) |
| Exhibit O | *Ava Enterprises, Inc. v. Audio Boss USA, Inc.*, 2006 WL 173465 at *4-5 (T.T.A.B. Jan. 12, 2006) |
| Exhibit P | *Solar Electronics, Inc. v. Tandy Corp.*, No. 86 C 10054, 1987 WL 28294 (N.D. Ill. Dec. 16, 1987) |
| Exhibit Q | *DC Comics v. Pan Am. Grain Mfg. Co., Inc.*, 77 U.S.P.Q.2d 1220 (T.T.A.B. 2005) |
| Exhibit R | *Roger & Gallet S.A. v. Venice Trading Co., Inc.*, 1 U.S.P.Q.2d 1829 (T.T.A.B. 1986) |

| Exhibit S | *First Int'l Servs. Corp. v. Chuckles, Inc.*, 5 U.S.P.Q.2d 1628 (T.T.A.B. 1987) |
| Exhibit T | *In re Pellerin Milnor Corp.*, 221 U.S.P.Q. 558 (T.T.A.B. 1983) |
| Exhibit U | *Precision Foods, Inc. v. Major Prods. Co.*, 2001 WL 1131865 (T.T.A.B. Sept. 20, 2001) |
| Exhibit V | *Penguin Books, Ltd. v. Eberhard*, 48 U.S.P.Q.2d 1280, 1287 (T.T.A.B. 1998) |

## **INTRODUCTION**

The only party that could possibly be entitled to the entry of summary judgment in its favor

in this case is defendant Wyeth, not plaintiff Walgreen Co. ("Walgreen's"). As shown in the

decision of the Trademark Trial and Appeal Board (the "TTAB") of the U.S. Patent & Trademark

Office (the "PTO") from which this appeal is taken, abundant evidence establishes a likelihood of

confusion between the WAL-VERT and ALAVERT trademarks, both used with identical over-the-

counter allergy treatment products sold side-by-side in the same stores, such that registration for

WAL-VERT should be refused. However, because the standards limiting the grant of summary

judgment are so stringent when likely confusion is at issue, summary judgment would be

inappropriate here, notwithstanding the strength of Wyeth's case. Thus, this appeal can only be

resolved after a full trial, like the TTAB proceedings below.

Walgreen's attempt to pretend otherwise wastes the parties' time and the Court's resources.

Indeed, Walgreen's Memorandum of Law in Support of Summary Judgment ("Moving Br.") is

disconnected from the evidentiary realities of this case and departs from prevailing law. For

example, Walgreen's explicitly or implicitly concedes that multiple factors governing the analysis of

likely confusion favor Wyeth, but then glosses over these conceded factors as if they no longer

matter. Further, Walgreen's bizarrely fails to mention that Wyeth has offered consumer survey

evidence showing that a net 28.1% of consumers surveyed confused ALAVERT and WAL-VERT,

thereby establishing the existence of actual confusion between the parties' marks. █████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████ there are obvious visual and aural

similarities between the parties' marks, but Walgreen's argues the Court should disregard entirely

the identical "VERT" suffix the two marks share and the clear resemblance between the "WAL" and "AL" prefixes. Instead, Walgreen's claims the Court should focus on other "WAL-" marks it has used with other private-label products not at issue in this proceeding, and the supposed expertise of a linguist who is part of a trio of experts newly engaged by Walgreen's for this phase of the proceeding as part of an unsuccessful effort to plug evidentiary gaps that the facts cannot fill.[1]

Further, Walgreen's Moving Brief repeatedly argues for the application of legal standards and the consideration of evidence that have no bearing on the adjudication of this case, which is limited to the issue of registration with the PTO, not infringement in the marketplace. When the correct standards are applied, the unreality of Walgreen's claimed entitlement to summary judgment becomes manifest, as does the necessity for a trial at which Wyeth will prevail.

## ARGUMENT

## POINT I

### WALGREEN'S HAS OFFERED AN INCOMPLETE AND MISLEADING DESCRIPTION OF THE STANDARDS GOVERNING THIS MOTION AND THIS PROCEEDING

To resolve this motion, the Court must apply several different, interrelated legal standards concerning: (i) motions for summary judgment under Fed. R. Civ. P. 56; (ii) *de novo* appeals from decisions of the TTAB under 15 U.S.C. § 1071(b)(1); and (iii) the assessment of likely confusion where registration, not infringing use, is at issue. The recitation of these standards on pp. 3-5 of Walgreen's Moving Brief is incomplete in certain key respects and misleading in others.

A.   The Summary Judgment Standard Under Fed. R. Civ. P. 56

Under Rule 56, summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." On such a

---

[1]   A complete recitation of the facts underlying Wyeth's opposition is set forth in its Counter-Statement of Material Facts in Opposition to Plaintiff's Motion for Summary Judgment (the "Counter-Statement") submitted pursuant to Local Civil Rule 56.1(b)(3).

motion, a court construes all facts and draws all inferences from the record in favor of the

nonmoving party (here, Wyeth). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Walgreen's incorrectly suggests in its Moving Brief that a looser standard applies here

because this case will be tried by the Court, not a jury.[2] *See Autozone, Inc. v. Strick*, 543 F.3d 923,

929, 934 (7th Cir. 2008) (reversing grant of summary judgment and applying traditional Rule 56

standard, notwithstanding that case would likely be tried by court on remand); *Northwest Bank*

*Minnesota, N.A. v. Diaz*, No. 96 C 5335, 1998 WL 30677 at *2 n.4 (N.D. Ill. Jan. 21, 1998) ("the

Court sees no reason to apply the summary judgment standard any less rigorously to the facts before

it than if the case was to be presented to a jury"). Further, under Seventh Circuit precedent that

Walgreen's never acknowledges, likely confusion may be resolved on summary judgment only "if

the evidence is so one-sided that there can be no doubt about how the question should be answered."

*CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 677 (7th Cir. 2001); *see also WMH Tool*

*Group, Inc. v. Woodstock Int'l, Inc.*, No. 07 CV 3885, 2009 WL 971425 at *5 (N.D. Ill. April 8,

2009) ("summary judgment is not appropriate where the plaintiff has shown that differences between

the parties as to any likelihood of confusion factors creates a genuine material issue of triable fact").

B.     The Standard of Review Under 15 U.S.C. § 1071(b)(1)

As Walgreen's notes, this Court sits here as both an appellate tribunal and a trial court. In the

first capacity, the TTAB's findings of fact are reviewed under a deferential standard that requires

them to be accepted provided they are supported by "substantial evidence," which is "'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *CAE*, 267 F.3d at

675 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Put differently, [the Court]

---

[2]     In fact, the cases Walgreen's cites on this point at page 3 of its Moving Brief merely stand for the unremarkable proposition that when there are no genuine disputes of material fact, and no questions of witness credibility or reliability, summary judgment is particularly appropriate when a case is to be tried by a court. Here, as shown *infra*, this case presents issues that only a trial can resolve.

must decide whether on this record it would have been possible for a reasonable jury to reach the Board's conclusion." *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 367 (1998). In the second capacity, new evidence the parties present is reviewed *de novo. CAE*, 267 F.3d at 674.

C.     The Standard Governing the Assessment of Likely Confusion

The sole issue the Court must resolve is whether Walgreen's is precluded from registering its WAL-VERT designation because of a likelihood of confusion with Wyeth's ALAVERT trademark. The standard governing the resolution of that issue is set forth in *In re E.I. DuPont de Nemours & Co.*, 476 F.2d 1357, 1361 (C.C.P.A. 1973), which delineates thirteen factors that can merit consideration in assessing the potential for confusion between two trademarks under 15 U.S.C. § 1052(d). However, only those factors made relevant by the evidence need to be considered. *Specialty Brands, Inc. v. Coffee Bean Distributors, Inc.*, 748 F.2d 669, 671 (Fed. Cir. 1984).[3]

Walgreen's acknowledges that the *DuPont* factors govern the resolution of this appeal, but it claims these factors mirror Seventh Circuit authority concerned with the assessment of likely confusion in the context of trademark infringement claims. Moving Br. at 4. This is a fundamental legal error. This is not an infringement case,[4] and the assessment of likely confusion in the infringement context is significantly different than when registration is the sole issue. For example, in an infringement case, trademarks must be assessed in the full context in which they appear in the marketplace. *Autozone*, 543 F.3d at 930. In contrast, when registration is at issue, similarity is considered only in terms of the marks as depicted in the applications or registrations at issue. *Rock-A-Bye Baby, Inc. v. Dex Prods., Inc.*, 867 F.Supp. 703, 711 (N.D. Ill. 1994). Similarly, likely

---

[3]     For example, there is no evidence of record concerning certain *DuPont* factors, such as: (i) the variety of goods on which a mark is or is not used (house mark, "family" mark, product mark); (ii) the market interface between applicant and the owner of a prior mark; and (iii) the extent to which applicant has a right to exclude others from use of its mark on its goods. *Id.*, 476 F.2d at 1361. Thus, these factors need not be considered here as part of the analysis of likely confusion.

[4]     The *CAE* case cited above was both a *de novo* appeal from a TTAB decision *and* an infringement case, making it appropriate for both Federal and Seventh Circuit standards to be applied. *Id.*, 267 F.3d at 670.

4

confusion in an infringement case takes into account the parties' goods and trade channels as they actually exist. *Autozone*, 543 F.3d at 931-32. In contrast, when registration is at issue, the goods and purchasing conditions are presumed to be as commercially broad as they could be for goods of the type described in the parties' applications and registrations, unless specifically restricted. *Bose Corp. v. QSC Audio Products, Inc.*, 293 F.3d 1367, 1376-77 (Fed. Cir. 2002). The Seventh Circuit has held that the weight to be afforded the factors it considers in assessing likely confusion varies, but intent, actual confusion and similarity are usually of particular importance. *Autozone*, 543 F.3d at 929; *but see Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 901-02 (7th Cir. 2001) (not error to weigh similarity of marks, similarity of goods and area and manner of concurrent use more heavily). In contrast, the Federal Circuit views similarity of the parties' marks and goods as being of particular importance. *Han Beauty, Inc. v. Alberto-Culver Co.*, 236 F.3d 1333, 1336 (Fed. Cir. 2001).[5]

What this means, then, is that Seventh Circuit and other federal court authorities are relevant to the issues this Court must decide, since some of the *DuPont* factors pertinent to registration are coextensive to varying degrees with some factors courts typically analyze in the infringement context, including the strength of the senior user's mark (here, ALAVERT), the degree of purchaser care and evidence of third-party use. However, these cases assessing likely confusion in the infringement context are not controlling because registration is the sole issue to be decided, and there is nothing in 15 U.S.C. § 1071(b) providing for a change in the legal standards governing registration when a TTAB decision is appealed to a district court. Thus, Walgreen's motion should be resolved under the same principles that governed the proceedings below. *See Victoria's Secret Stores Brand Mgt., Inc. v. Sexy Hair Concepts, LLC*, No. 07 Civ. 5804 (GEL), 2009 WL 959775 (S.D.N.Y. April 8, 2009) (applying *DuPont* where sole issue was that of trademark registration).

---

[5] Indeed, intent is not even one of the enumerated *DuPont* factors and is considered in appropriate cases only as part of the evaluation of "any other established fact probative of the effect of use." *Id.*, 476 F.2d at 1361.

## POINT II

## WALGREEN'S IS NOT ENTITLED TO SUMMARY JUDGMENT

When the foregoing standards are properly applied to the decision below, the facts of record before the TTAB, and the new evidence offered on appeal, it is apparent that Walgreen's is not entitled to summary judgment.

A.   Walgreen's Has Explicitly or Implicitly
     Conceded That Four *DuPont* Factors Favor Wyeth

In a concession briefly mentioned on page 6 of its Moving Brief, Walgreen's admits, at least for purposes of this motion, that the *DuPont* factors concerned with the strength of the ALAVERT trademark, the parties' goods, and their respective trade channels all favor Wyeth. Thereafter, Walgreen's studiously ignores the significance of these concessions, as if they are no longer relevant to the Court's analysis. This is yet another critical error.

Consumer recognition of the prior trademark (the fifth *DuPont* factor) "plays a dominant role in cases featuring a famous or strong mark. Famous or strong marks enjoy a wide latitude of legal protection," *Kenner Parker Toys, Inc. v. Rose Art Indus., Inc.*, 963 F.2d 350, 352 (Fed. Cir. 1992), and the Federal Circuit has faulted the TTAB for giving inadequate weight to the strength of the senior user's mark in the *DuPont* analysis, as Walgreen's would have the Court do here with respect to ALAVERT. *Kimberly-Clark Corp. v. H. Douglas Enterprises, Inc.*, 774 F.2d 1144, 1146-1147 (Fed. Cir. 1985). Similarly, if two trademarks are used in connection with the same type of goods, the likelihood of confusion between them is magnified. *Specialty Brands*, 748 F.2d at 675. The identity of the parties' goods and trade channels greatly increases the likelihood of confusion between ALAVERT and WAL-VERT. *See, e.g., Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 948 (Fed. Cir. 2000); *Kenner Parker*, 963 F.2d at 355; *Kimberley-Clark*, 774 F.2d at 1146.

Walgreen's also barely acknowledges a fourth *DuPont* factor favoring Wyeth: "the number and nature of similar marks in use on similar goods." *Id.*, 476 F.2d at 1361. ██████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████ The only evidence of any third-party use offered by Walgreen's is testimony from Wyeth personnel that they are aware of the pain reliever ALEVE, the prescription allergy medication ALLEGRA, and an obscure allergy treatment product called ALLEREST. Statement of Undisputed Material Facts in Support of Plaintiff's Motion for Summary Judgment ("Statement"), Exh. 10 at 154-55. However, none of these marks is confusingly similar as a whole to ALAVERT like WAL-VERT.[6] *See* the accompanying Declaration of Mary Baumann ("Baumann Dec."), ¶¶ 14-15; *see also Specialty Brands*, 748 F.2d at 675 (COUNTRY SPICE and THE SPICE MARKET were dissimilar to SPICE ISLANDS mark and therefore did not undercut its strength). Walgreen's effort to evade the fact that four *DuPont* factors favor Wyeth defies reality.

B.     The ALAVERT and WAL-VERT Marks Are Very Similar

One of the best measures of likely confusion between two trademarks is the "similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression," *DuPont*, 476 F.2d at 1361, but "[i]t is well established that similarity in *any one* of the elements of sound, appearance, or meaning is sufficient to indicate likelihood of confusion." *General Foods Corp. v. Wisconsin Bottling, Inc.*, 190 U.S.P.Q. 43, 45 (T.T.A.B. 1976) (emphasis added). Further, "[w]hen marks would appear on virtually identical goods or services, the degree of

---

[6]     Further, the distinctiveness and strength of an otherwise well known trademark cannot be diminished by third-party marks used with different goods or services. *National Cable Television Association, Inc. v. American Cinema Editors, Inc.*, 937 F.2d 1572, 1579-80 (Fed. Cir. 1991); *see also McGraw-Edison Co. v. Walt Disney Prods., Inc.*, 787 F.2d 1163, 1171 (7th Cir. 1986) (third-party use must concern similar marks that are actually used with the same goods and recognized by consumers in order to be relevant).

similarity necessary to support the conclusion of likely confusion declines." *Century 21 Real Estate Corp. v. Century Life of America*, 970 F.2d 874, 877 (Fed. Cir. 1992).

Here, the TTAB decision holding that WAL-VERT and ALAVERT are similar in all three respects is supported by far more than substantial evidence. With respect to sound, the pronunciation of the two terms is obviously close, given the identical, common suffix and similarly pronounced "WAL" and "AL" prefixes. █████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ Visually, the two marks differ by only one letter, plus a hyphen in WAL-VERT. ███████████████ █████████████████████████████████████████████████████ █████████████████████████████████████████████████████ █████████████████████████████████████████████████████ █████████████████████████████████████████████████████ ███████████████████████████████████████. Numerous cases confirm that confusion is likely when marks are as similar as those here. *See Kenner Parker Toys*, 963 F.2d at 350 (reversing TTAB decision and finding confusion likely between PLAY-DOH and FUNDOUGH marks, as used with same goods); *Kimberly-Clark*, 774 F.2d at 1144 (confusion likely between HUGGIES and DOUGIES, both used on disposable diapers); *Crown Radio Corp. v. Soundscriber Corp.*, 506 F.2d 1392 (C.C.P.A. 1974) (CROWN SCRIBER and SOUNDSCRIBER similar); *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 462 (7th Cir. 2000) ("The similarity between the names PROZAC and HERBROZAC is obvious . . . .").

Walgreen's is unable to explain coherently how it could possibly be entitled to summary judgment in a case involving marks resembling each other as strongly as ALAVERT and WAL-

8

VERT, in a procedural context where Wyeth is entitled to the benefit of every favorable inference

and when the TTAB's findings are entitled to deference. It therefore adopts two alternative lines of

attack. The first is to argue at great length that WAL-VERT is part of one big happy family of

"WAL" marks adopted by Walgreen's over the years to copy national brands, such that WAL-

VERT, as part of this group, could not possibly be deemed similar to ALAVERT. This argument

ignores the fact that WAL-VERT and ALAVERT are far more similar to each other than Walgreen's

other private-label designations and their national-brand counterparts; indeed, no other marks on

Walgreen's list copy both the prefix and the suffix of the correlative national brand. Statement,

¶¶ 33-34; Baumann Dec., ¶¶ 14-15. Moreover, Walgreen's alleged general practice of using a

"WAL-" prefix is not nearly as consistent as it would have the Court believe, *see* Ewing Dec., Exh. I

at 74-81; Exh. P, and is irrelevant to the similarity of these two marks, which is measured solely

based on how these marks appear in the application and registration at issue. *Wynn v. U.S. Patent &*

*Trademark Office*, 185 F. Supp. 2d 785, 790-91 (E.D. Mich. 2002) (declining to consider evidence

of material accompanying plaintiff's mark as it was used in the marketplace that was omitted from

the applications at issue on appeal from TTAB decision); *Blansett Pharmacal Co., Inc. v. Carmrick*

*Labs., Inc.*, 25 U.S.P.Q.2d 1473 (T.T.A.B. 1992) (rejecting claim that NALEX and NOLEX were

dissimilar because consumers associated NOLEX with respondent's other "NOL-" prefix marks).

Walgreen's alternative stratagem is to rely on Dr. Ronald Butters, who opines that the

parties' marks differ linguistically. His expertise is surely unnecessary for the Court to understand

that: (i) WAL-VERT has two syllables while ALAVERT has three; (ii) WAL-VERT begins with a

"W" while ALAVERT does not; and (iii) WAL-VERT has a hyphen that ALAVERT lacks.[7]

---

[7]     Butters believes that the hyphen in WAL-VERT allows consumers to distinguish "subconsciously" between
the two marks, Ewing Dec., Exh. F at 136, but legal precedent is to the contrary. *Trilink Saw Chain, LLC v. Blount,
Inc.*, 583 F. Supp. 2d 1293, 1315 n.9 (N.D. Ga. 2008) ("the use of a hyphen is too minor a difference to be classified
as significant").

Moving Br., Exh. 13 at 6-7. *See Infinity Broadcasting Corp. v. Greater Boston Radio, II, Inc.*, Civ. A. No. 93-11161-WF, 1993 WL 343679 at *6 (D. Mass. Aug. 13, 1993) ("the subject on which the linguist is opining is whether the letters 'WBCN' and 'WBCS' sound so much alike that the average listener, upon hearing one set, will mistakenly think that he or she has heard the other. Any person with average hearing ability, including the author of this opinion, is presumably as qualified as a linguist to make this determination.").

Beyond these obvious conclusions, Butters offers a nearly incomprehensible argument that the marks' prefixes are pronounced so differently and are so important to the assessment of similarity (as compared to the "VERT" suffix he regards as inconsequential) that confusion is impossible. Moving Br., Exh. 13 at 3-6. However, Butters' opinions as a paid expert in this case are severely undercut by his prior statement outside of the litigation context that equal weight should be given to the beginnings *and* endings of words in the analysis of similarity: "it is a well-accepted principle of linguistics that the beginnings *and endings* of words are the most important to recognition and memory." *See* R. Butters, "Trademarks and Other Proprietary Terms," *Dimensions of Forensic Linguistics* (2008), Ewing Dec., Exh. AL at 234-35 (emphasis added).[8] Butters also makes the peculiar claim that WAL-VERT is more likely to be understood by consumers as connoting "a brand of ladder or a straightening device for correcting leaning walls," Moving Br., Exh. 13 at 9, than an allergy relief product, completely ignoring Walgreen's concession that it adopted WAL-VERT to connote ALAVERT through the "VERT" suffix.[9] Ewing Dec., Exh. E at

---

[8] In this same article, Butters advocated assessing the similarity of trademarks by comparing the number of letters they have in common, claiming "[q]uantification is one approach much favored by the legal system." Ewing Dec., Exh. AL at 234. Butters did not use such an approach here, apparently because, as he conceded during his deposition, WAL-VERT and ALAVERT combined have approximately 86% of their letters in common (80% if the hyphen in WAL-VERT is counted). Ewing Dec., Exh. F at 128-33.

[9] ███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████

45-46; Exh. X at 20-27; Moving Br. at 2. Butters' opinions thus provide no basis to overturn the

TTAB's decision, let alone to grant Walgreen's summary judgment. *See Bridgestone/ Firestone of*

*North American Tire, LLC v. Silverstone Berhad*, 2003 WL 1559659 at *8 (T.T.A.B. March 21,

2003) ("likelihood of confusion depends on how purchasers perceive marks and not on the opinions

of linguistic experts or those familiar with the meaning and derivation of words").

C.     Walgreen's Arguments Concerning Actual Confusion Are Misleading

Walgreen's discussion of the *DuPont* factor concerned with actual confusion contains only a

few accurate statements that are nearly lost in a series of misleading assertions of fact and law. First,

the parties agree that Wyeth is not required to offer evidence of actual confusion to establish likely

confusion. *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1571 (Fed. Cir. 1983);

*Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 938 (7th Cir. 1989). Second, the parties concur that both

anecdotal incidents of confusion and consumer surveys are relevant in assessing actual confusion.

*McGraw-Edison Co.*, 787 F.2d 1163, 1171-72. Third, the parties agree that the record contains no

evidence of anecdotal instances of confusion between ALAVERT and WAL-VERT.

Walgreen's believes that this third fact is "the single most important and telling factor in this

case," Moving Br. at 6, but this is a vast overstatement. As two cases cited by Walgreen's point out,

the absence of evidence of actual confusion is not the equivalent of proof that there has been no

actual confusion. *See CAE*, 267 F.3d at 686 ("the most that the absence of evidence of actual

confusion can be said to indicate is that the record does not contain any evidence of actual confusion

*known to the parties*") (emphasis added); *Brookfield Comms., Inc. v. West Coast Ent. Corp.*, 174

F.3d 1036, 1050 (9th Cir. 1999). The absence of such evidence here is no more remarkable than in

cases where marks coexisted for long periods and where likely confusion was found. *See CAE*, 267

F.3d at 686 (twenty-five-year coexistence without evidence of actual confusion); *Perfumebay.com,*

11

*Inc. v. eBay, Inc.*, 506 F.3d 1165, 1169, 1175-76 (9th Cir. 2007) (no evidence of actual confusion

between time use of infringer's marks began in 1998 or 1999 and trial occurred in 2005).

Here, the absence of evidence of anecdotal actual confusion is understandable. Because the

parties' products are inexpensive, comparably priced, contain the same active ingredient and are

functionally identical, the odds of any consumer realizing they have been confused are very low.

*Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 704 (5th Cir. 1981) ("It

would be exceedingly difficult to detect instances of actual confusion when, as here, the goods are

relatively inexpensive and their actual properties are exactly identical . . . ."). Consumers who

understand that WAL-VERT and ALAVERT are different products but nevertheless mistakenly

believe that they are affiliated or connected with each other, or that the manufacturer of ALAVERT

has authorized or sponsored WAL-VERT, would have even less reason to ever realize their error.

*See First National Bank in Sioux Falls v. First National Bank South Dakota SPC, Inc.*, No. Civ. 06-

4101, 2008 WL 895931 at *12 (D. S.D. March 31, 2008).

Thus, the only consumers who could possibly have a reason to raise their confusion with

either party are those who realize that they have purchased WAL-VERT when they intended to buy

ALAVERT, and then were motivated to communicate with one of the parties. However, this niche

of mistaken purchasers of WAL-VERT could only raise the issue with Wyeth if they knew that

Wyeth was the manufacturer of ALAVERT and also knew how to contact it. Since the packaging

for WAL-VERT does not mention Wyeth's contact information, Baumann Dec., Exh. C, it is hardly

surprising there is no evidence of such consumer contacts.[10]

Conceivably, any consumers who both realized their confusion and wanted to raise the issue

could contact Walgreen's via the store where they made their purchase. ████████████████

---

[10] ████████████████████████████████████████████████
████████████████████████████████████████████████



Indeed, the most that can be said of this record is that neither party is aware of anecdotal instances of actual confusion having occurred.

For this reason, the new evidence offered by the parties on the issue of actual confusion, in the form of consumer surveys, takes on added importance.[12] Incredibly, just as Walgreen's has studiously downplayed the impact of its concession that four of the *DuPont* factors favor Wyeth, it ignores completely the survey Wyeth conducted as part of Walgreen's appeal. As set forth in the accompanying Declaration of George Mantis ("Mantis Dec."), this survey shows that a net 28.1% of

---

[11] *See Covia Partnership v. Northwest Airlines, Inc.*, No. 93 C 3008, 1997 WL 652324 at *3 (N.D. Ill. Oct. 7, 1997) (where testimony of witnesses was in conflict on a material fact, issue of their credibility required resolution at trial).

[12] Most of the cases Walgreen's cites in support of its arguments on the issue of actual confusion involved no survey evidence and are therefore inapposite. *See Top Tobacco, L.P. v. North Atlantic Operating Co.*, No. 06 C 950, 2007 WL 118527 at *6 (N.D. Ill.) (Exh. 5 to Moving Br.), *aff'd*, 509 F.3d 380 (7th Cir. 2007); *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1045-46 (7th Cir. 2000); *Libman Co. v. Vining Industries, Inc.*, 69 F.3d 1360, 1361 (7th Cir. 1996); *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482 (1st Cir. 1981); *Allen Bros., Inc. v. AB Foods, LLC*, No. 06 C 1269, 2008 WL 345600 at *5 (N.D. Ill. Feb. 6, 2008) (Exh. 7 to Moving Br.); *Sparknet Comms., L.P. v. Bonneville Int'l Corp.*, 386 F. Supp. 2d 965, 977 (N.D. Ill. 2005); *Planet Hollywood (Region IV), Inc. v. Hollywood Casino Corp.*, 80 F. Supp. 2d 815, 883-84 (N.D. Ill. 1999); *Master Builders, Inc. v. Polymerica, Inc.*, 2004 WL 407353 (T.T.A.B. Feb. 24, 2004) (Exh. 8 to Moving Br.); *Toro Co. v. Grassmasters, Inc.*, 2003 WL 255724 (T.T.A.B. Feb. 4, 2003) (Exh. 6 to Moving Br.).

prospective purchasers of over-the-counter allergy treatment products surveyed were confused by ALAVERT and WAL-VERT as to source, affiliation, connection, authorization or sponsorship, and that such confusion was caused by the names of the two products. Mantis Dec., Exh. A at 11. The survey design used in Wyeth's survey comports with TTAB precedent, *see Team Air Express, Inc. v. Alliance Shippers, Inc.*, 2007 WL 4438620 at *13-15 (T.T.A.B. Dec. 11, 2007); *Ava Enterprises, Inc. v. Audio Boss USA, Inc.*, 2006 WL 173465 at *4-5 (T.T.A.B. Jan. 12, 2006), and is particularly suitable here because of the side-by-side manner in which ALAVERT and WAL-VERT are presumed to be and actually are encountered. *Bose*, 293 F.3d at 1377 at 1310; Mantis Dec., ¶¶ 8-13.

Further, the percentage of confused respondents detected in the Mantis survey is well above the threshold courts deem significant, particularly given the size of the market for the products in this case. *See James Burrough, Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 279 (7th Cir. 1976) (survey results showing confusion percentage of 15% deemed significant).[13]

In contrast, the survey offered by Alex Simonson upon which Walgreen's relies is inherently unreliable in the circumstances of this case. ██████████████████████████████████ ██████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ███████████████████████████████████ the Simonson study cannot provide an accurate prediction

---

[13] The Mantis survey also highlights the weakness of Walgreen's arguments on the issue of similarity, since the most common reason given by the seventy-eight (78) respondents who confused ALAVERT and WAL-VERT in that study was the "VERT" suffix the marks share. Mantis Dec., ¶ 20, Exh. A at 17-28.

[14] "Unaided awareness" is a measure of the extent to which consumers can identify a brand name without any prompting. "Aided awareness" is a measure of the extent to which consumers confirm their awareness of a brand after it is specifically mentioned to them. Mantis Dec., ¶ 10. █████████████████████████████████ ██████████████████████████████████████████████████████

of whether consumers are likely to confuse the parties' marks. *See Team Air Express*, 2007 WL 4438620 at *13-15 (rejecting Mantis survey using *Ever-Ready* design because it failed to measure confusion among consumers exposed to both parties' marks); *Simon & Schuster, Inc. v. Dove Audio, Inc.*, 970 F. Supp. 279, 291, 298-99 (S.D.N.Y. 1997) (discounting survey conducted using *Ever-Ready* design because that design is unlikely to detect full measure of confusion ███████████████ ███████████████). In addition, the wording of key questions in the Simonson survey questionnaire was flawed, further undercutting its validity. Mantis Dec., ¶¶ 26-29, Exh. B at 6-12.

Thus, the Mantis study is far more reliable than the Simonson study on which Walgreen's relies and is compelling evidence of actual confusion that now tilts this *DuPont* factor from neutral, as the TTAB concluded, to one favoring Wyeth.[15] At a minimum, Wyeth is entitled to the benefit of every favorable inference from the Mantis survey, precluding Walgreen's from obtaining summary judgment. *See AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 618 (7th Cir. 1993) (faulting district court for granting summary judgment while ignoring survey evidence entitled to weight on issue of actual confusion); *McGraw-Edison*, 787 F.2d at 1172 (same); *Solar Electronics, Inc. v. Tandy Corp.*, No. 86 C 10054, 1987 WL 28294 at *1 (N.D. Ill. Dec. 16, 1987) ("[t]he issue of the credibility of experts is not an appropriate issue for consideration in the context of summary judgment motions . . . .").

---

[15]



D.     Walgreen's Has Acted in Bad Faith

As with other issues discussed in its Moving Brief, Walgreen's discussion of its allegedly

honorable intentions is entirely premised on the fiction that evidence at odds with its position does

not exist.[16] Indeed, Walgreen's argues that a finding in its favor on the issue of bad faith is

permissible based solely on its own say-so, but this would be particularly inappropriate in the

context of a motion for summary judgment.   *See Autozone*, 543 F.3d at 934; *see also McGraw-

Edison*, 787 F.2d at 1173 ("'Subjective issues such as good faith are singularly inappropriate for

determination on summary judgment.'") (citation omitted); *AHP*, 1 F.3d at 619 ("the district court

cannot weigh credibility issues at the summary judgment stage").



---

[16]     Although the issue of Walgreen's bad-faith is not one of the enumerated *DuPont* factors, the issue is pertinent
to the inquiry into likely confusion, *DC Comics v. Pan Am. Grain Mfg. Co., Inc.*, 77 U.S.P.Q.2d 1220, 1228
(T.T.A.B. 2005), because when a junior user adopts a mark that it intends to be substantially similar to the senior
user's mark, a presumption arises that the intended confusion will occur. *Bandag, Inc. v. Al Bolser's Tire Stores,
Inc.*, 750 F.2d 903, 915 (Fed. Cir. 1984).

[17]



The TTAB has held that a junior user who knowingly adopts a mark similar to that of another on the same or closely related goods does so at its peril, *see, e.g., First Int'l Servs. Corp. v. Chuckles, Inc.*, 5 U.S.P.Q.2d 1628, 1633 (T.T.A.B. 1987) (internal citations omitted), and the Seventh Circuit has long held likewise. *See Northam Warren Corp. v. Universal Cosmetic Co.*, 18 F.2d 774, 775 (7th Cir. 1927) ("One entering a field of endeavor already occupied by another should, in the selection of a trade name or trademark, keep far enough away to avoid all possible confusion."); *McGraw-Edison*, 787 F.2d at 1167 (same). Walgreen's violation of this duty tips the issue of intent in Wyeth's favor.

E.     <u>Consumers Do Not Exercise a High Degree of Care in Purchasing the Parties' Products</u>

In the decision below, the TTAB considered the *DuPont* factor concerned with the degree of care that consumers devote to purchasing over-the-counter allergy treatment products and concluded that this factor was neutral. Specifically, it found that the parties' goods were inexpensive and aimed at the general public, "including some less sophisticated individuals," but also that the parties' products were not goods likely to be purchased on impulse and that "a purchaser exercises a certain degree of care of care in purchasing any medication, even one which is relatively inexpensive."

Statement, Exh. 5 at 25. Given these countervailing facts, which Walgreen's does not dispute on this appeal, the TTAB's decision to treat this factor as neutral was supported by substantial evidence.

Walgreen's argues that purchasers of over-the-counter allergy treatment products should be treated, as a matter of law, as being so knowledgeable and sophisticated that confusion is unlikely to occur, but even sophisticated purchasers are not immune to confusion. *In re Pellerin Milnor Corp.,* 221 U.S.P.Q. 558, 560 (T.T.A.B. 1983); *Computer Care v. Service Systems Enterprises, Inc.,* 982 F.2d 1063, 1070 (7th Cir. 1992).[18] ███████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████████████████████████████████████

---

[18]     Further, most of the cases cited by Walgreen's on this point concern expensive goods aimed at specialized audiences, not low-priced goods such as these marketed to the general public. *See Precision Foods, Inc. v. Major Prods. Co.,* 2001 WL 1131865 at *1 (T.T.A.B. Sep't 20, 2001) (Moving Br., Exh. 16), *aff'd,* 49 Fed. Appx. 308 (Fed. Cir. 2002) (food thickener available for purchase primarily through pharmacists on special order); *Electronic Design & Sales, Inc. v. Electronic Data Systems Corp.,* 954 F.2d 713, 718 (Fed. Cir. 1992) ("opposer's services are expensive and are purchased *only* by experienced corporate officials after significant study and contractual negotiation") (emphasis in original); *Magnaflux Corp. v. Sonoflux Corp.,* 231 F.2d 669 (C.C.P.A. 1956) (scientific testing apparatuses); *S Industries, Inc. v. JL Audio, Inc.,* 29 F. Supp. 2d 878, 892 (N.D. Ill. 1998) (custom-made goods priced between $500-$2,000 each).

In *Eli Lilly*, the Seventh Circuit held that it was proper to discount the issue of consumer care, as the TTAB essentially did here, in a case involving pharmaceuticals and dietary supplements because: (i) even careful consumers who understood that HERBROZAC was not PROZAC might believe the two products were affiliated and connected in some way because of the similarity in their names; and (ii) "there is just no evidence that consumers *as a whole* are extraordinarily careful when it comes to dietary supplements." *Id.*, 233 F.3d at 464 (emphasis added). Here, the market for over-the-counter allergy treatment products exceeds ▆▆▆▆ consumers, Baumann Dec., ¶ 3, and the sort of broad generalizations Walgreen's would have the Court adopt are not true for most of them. The TTAB's decision to treat this factor as neutral was therefore correct.

F.  Walgreen's Remaining Arguments Fail

In the final portion of its Moving Brief, Walgreen's addresses the *DuPont* factor concerned with whether the potential for confusion is either substantial or *de minimis*, which it faults the TTAB for failing to consider. Moving Br. at 5. However, as noted previously, the TTAB is only obliged to consider those factors made relevant by the facts before it, *Specialty Brands*, 748 F.2d at 671, and since Walgreen's itself failed to discuss this factor that it now claims is "highly relevant" during the briefing below, the TTAB can hardly be faulted for failing to do so. Moving Br. at 5; *Bose*, 293 F.3d at 1370. Moreover, most of this discussion has nothing to do with the potential for confusion and everything to do with Walgreen's reiteration of earlier allegations on other topics[19] and arguments that the Court should disregard the entire mode of analysis governing TTAB proceedings and treat this appeal as if it were an infringement suit. Moving Br. at 18-19.

---

[19] 

There is no legal precedent for this, and the fact that Walgreen's would coyly suggest otherwise demonstrates the weakness of its arguments. Walgreen's seeks to register WAL-VERT unaccompanied by the WALGREEN'S trademark. This means that it, or third parties to which Walgreen's could assign the trademark, could use WAL-VERT, if registered, on products not sold in Walgreen's stores and without any of the material Walgreen's claims is so distinguishing. Ewing Dec., Exh. AM. Its application contains no restrictions on trade channels, price, purchasers or purchasing conditions. *Id.* Given the breadth of the rights Walgreen's asks the Court to confer, it cannot argue that limiting marketplace factors have a place in the analysis. *Cunningham*, 222 F.3d at 950-51; *Penguin Books, Ltd. v. Eberhard*, 48 U.S.P.Q.2d 1280, 1287 (T.T.A.B. 1998).

* * * * *

By Walgreen's own admission, four of the *DuPont* factors Wyeth. With respect to those that remain, ALAVERT and WAL-VERT are so similar in so many respects that this factor strongly favors Wyeth. Indeed, the Mantis survey results, which establish the *DuPont* factor concerned with actual confusion, also demonstrate how readily consumers perceive the similarities between the parties' marks. ███████████████████████████████████████ ███████████████████████████████████████████████████ And as for Walgreen's arguments that purchasers of inexpensive over-the-counter allergy treatment products are so sophisticated and careful that confusion is impossible, this claim is refuted by the evidence of record. Wyeth has invested ████████████████ over seven years turning ALAVERT into one of the nation's top-selling, best-known brands of over-the-counter allergy treatment products. Ewing Dec., Exh. P. Walgreen's adoption and effort to register WAL-VERT is a blatant attempt to ride on Wyeth's coattails that will substantially undermine the distinctiveness of the ALAVERT trademark. As a result, Walgreen's is not entitled to prevail – not on this motion, not in this case.

20

## CONCLUSION

For all of the foregoing reasons, Wyeth respectfully requests that the Court deny Walgreen's

motion for summary judgment in its entirety.

Dated: New York, New York                    Respectfully Submitted,
       July 8, 2009


                                     DORSEY & WHITNEY LLP


                                  By:_____S/_____
                                     Bruce R. Ewing (*pro hac vice*)
                                     Sandra Edelman (*pro hac vice*)
                                     250 Park Avenue
                                     New York, New York 10177
                                   (212) 415-9200

                                   Peter A. Tomaras (No. 6180423)
                                   WILDMAN, HARROLD, ALLEN &
                                   DIXON LLP
                                   225 West Wacker Drive, Suite 2800
                                   Chicago, Illinois 60606-1229
                                   (312) 201-2000

                                   Attorneys for Defendant Wyeth

21