IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WALGREEN CO., an Illinois corporation, | ) | Civil Action No. 08-cv-05694 |
| | ) | |
| Plaintiff, | ) | Judge G. W. Lindberg |
| | ) | Magistrate Judge A. Keys |
| v. | ) | |
| | ) | **DECLARATION OF MARY** |
| WYETH, a Delaware corporation, | ) | **BAUMANN IN OPPOSITION TO** |
| | ) | **PLAINTIFF'S MOTION FOR** |
| Defendant. | ) | **SUMMARY JUDGMENT** |

MARY BAUMANN hereby declares as follows:

1. I am the Group Product Director, Advil Cold & Sinus and Alavert, for Wyeth, the defendant in this proceeding. I have worked for Wyeth since 2001 and assumed primary responsibility for Wyeth's ALAVERT products in approximately 2007. ALAVERT is a leading brand of over-the-counter allergy treatment product that Wyeth introduced in December 2002. I submit this Declaration to address several topics raised by the motion for summary judgment filed by the plaintiff in this proceeding, Walgreen Co. ("Walgreen's"). I have personal knowledge of the facts set forth below.

**The Behavior of Purchasers of Over-the-Counter Allergy Treatment Products**

2. Walgreen's argues in its motion, relying heavily on one page of one sales presentation created by Wyeth, that consumers exercise a high degree of care in deciding among the various brands of over-the-counter allergy treatment products available to them in the marketplace, such that confusion between ALAVERT and Walgreen's directly competitive WAL-VERT product is unlikely. Based on my familiarity with the market for over-the-counter allergy treatment products and Wyeth's research concerning consumer behavior in this market, I believe Walgreen's contention is undermined by empirical data in Wyeth's files. ▇

██████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████████████████████

3. According to data compiled for Wyeth, approximately ███ of U.S. households contain at least one person who suffers from seasonal allergies, which makes the potential market for the products at issue in this proceeding greater than ████████ people. Among such a vast group, it is difficult to make broad generalizations about the process through which consumers make decisions to purchase over-the-counter allergy treatment products. Indeed, there is such a wide variation among these consumers that no single set of behaviors defines them as a group. At most, one can say only that there are general traits common to many of these purchasers, but that substantial numbers of such purchasers behave differently.

4. ████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████

5. ████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████



6.

---

[1] Allergy treatment products are a subset of the broader market for respiratory products that also includes non-competitive items such as cough drops, cold remedies, flu medications and other similar goods. The data cited at page WY_FED_11036 of Exhibit E to Exhibit 8 of Walgreen's Statement of Undisputed Material Facts in Support of Plaintiff's Motion for Summary Judgment ("Statement"), upon which Walgreen's places great emphasis, is germane to the market for allergy relief products but is not specific to it. Thus, it cannot be viewed as a definitive characterization of how consumers purchase allergy relief products.

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
██████████████████████████. *Id.*

7.   ██████████████████████████████
██████████████████████████████
██████████████████████████████
██████████████████████████████
██████████████████████

██████████████████ During such a review of over-the-counter allergy treatment products and their packaging, consumers will be exposed to multiple marketing messages, product imagery, scientific information whose disclosure is required by government regulators, and other information. Amid such a sea of material, the most prominent element of what consumers will observe are the brand names of the various products on display, including ALAVERT and WAL-VERT shelved next to each other.

8.   When and if consumers examine the packaging for ALAVERT and WAL-VERT, they of course would have the opportunity to perceive additional information about the two products than just their brand names, but most of the information that most allergy sufferers would consider material is identical, as shown in the packaging for the two products depicted in Exhibits B and C hereto. The active ingredient in both products is loratadine, a non-sedating antihistamine that is also contained in CLARITIN. *Id.* Each ALAVERT and WAL-VERT tablet is effective for 24 hours in alleviating allergy symptoms. *Id.* In addition, both ALAVERT and WAL-VERT come in a form of tablet that dissolves in the mouth, without the need to be

swallowed with water. *Id.* Thus, to the extent a consumer cares about any of these product attributes or benefits and looks for them in reviewing over-the-counter allergy treatment products on store shelves, they will find that ALAVERT and WAL-VERT are indistinguishable in these regards.

9. 

10. In sum, then, Walgreen's contention that consumers exercise a high degree of care in purchasing over-the-counter allergy relief products is not supported by the data on which it relies or additional research in Wyeth's files. While some consumers do spend more time than others scrutinizing such products on store shelves where most purchasing decisions are made, most do not. And, even for those consumers who scrutinize over-the-counter allergy relief products, ALAVERT and WAL-VERT are not readily distinguishable based on factors that might otherwise be applicable, such as ingredients, product attributes, price, marketing themes or, of course, their brand names.

**The Demographics of ALAVERT Purchasers**
**and the Consumers Wyeth Targets With Its Marketing Efforts for ALAVERT**

11. Walgreen's motion papers present a skewed version of both the actual and targeted demographics of ALAVERT purchasers. As a general matter, Wyeth is interested in

5

selling ALAVERT to every allergy sufferer who might want to buy the product, from old to young, rich to poor, and without regard to race or gender.

12. ███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
█████████████████████████████
██████████████████████████████
███████████████████████████████
██

13. ███████████████████████████████
██████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
█████████████████

**<u>Wyeth's Concerns Regarding WAL-VERT</u>**

14. Walgreen's submissions recount its historical habit of using designations for some of its private-label products that combine a "WAL" prefix with a suffix taken from a leading national brand. Among these products are WAL-TUSSIN and WAL-TAPP, which are private-

label versions of Wyeth's ROBITUSSIN and DIMETAPP products. Walgreen's suggests that Wyeth's concerns about WAL-VERT are misplaced in light of its prior tolerance of these other designations used by Walgreen's with its private-label goods.

15. Whatever Wyeth's position has been regarding other Walgreen's designations, the situation presented by Walgreen's use of WAL-VERT is demonstrably different. WAL-VERT and ALAVERT have obvious visual, aural and linguistic similarities in both the prefix and suffix of the respective marks that are absent from the other marks upon which Walgreen's relies. While "WAL" has zero similarity at any level to the "ROBI" and "DIME" components of ROBITUSSIN and DIMETAPP, "WAL" and "ALA" differ by only one letter. Indeed, WAL-VERT and ALAVERT are far closer to each other than any of the marks depicted in the charts depicted on pp. 7-8 of Walgreen's Statement. At most, the Walgreen's private-label brand names referenced there contain only one component that is appropriated from a national brand, not two.

16. Further, Wyeth is unaware of any product, whether branded or private-label, on sale in the U.S. today in any trade channel that uses a designation that is as close to ALAVERT as WAL-VERT. There are a number of products that use an "AL" component in the allergy-treatment category, including ALLEGRA, a well-known prescription medication, and ALLEREST, a very small brand of over-the-counter allergy relief product whose sales are so low that they do not show up in syndicated sales tracking data, but these brands are readily distinguishable from ALAVERT. Wyeth is unaware of any over-the-counter allergy treatment products sold in the U.S. today that contain a "VERT" suffix other than WAL-VERT, let alone one whose prefix looks and sounds as similar to "AL" as does the prefix "WAL," and whose products are sold adjacent to ALAVERT, as WAL-VERT is.

17. Wyeth does not take issue with Walgreen's right to market private-label versions of ALAVERT or to market such products as being comparable to ALAVERT.

Walgreen's claims in its motion papers that the prevalence of private-label versions of national brands makes it "logical to infer that consumers are highly accustomed to retailers' sales of private label OTC goods, and are not likely to be confused when encountering same," Walgreen's Moving Brief at 18, but I am aware of no evidence supporting this assertion. Indeed, as familiar as consumers may be with private-label goods in a general sense, most such goods do not bear brand names that are as similar to corresponding national brands as WAL-VERT is to ALAVERT. Further, Walgreen's application to register WAL-VERT is, as I understand it, not restricted to private-label merchandise at all.

18. In order to preserve the distinctiveness of the ALAVERT trademark, Wyeth believes that the decision of the Trademark Trial and Appeal Board of the U.S. Patent & Trademark Office refusing registration to WAL-VERT was correct and should be affirmed.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 7, 2009
Madison, New Jersey

_____
Mary Baumann

8

**Index of Exhibits to Declaration of Mary Baumann**

| Exhibit A | Wyeth Alavert Switching Study |
|---|---|
| Exhibit B | Image of Alavert packaging |
| Exhibit C | Image of Wal-vert packaging |
| Exhibit D | 2009 Alavert advertisements |
| Exhibit E | Alavert demographic data compiled by Nielsen for Wyeth |