IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WALGREEN CO. | ) | |
| (an Illinois corporation), | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-cv-5694 |
| | ) | |
| WYETH | ) | |
| (a Delaware corporation), | ) | Judge G. W. Lindberg |
| | ) | Magistrate Judge A. Keys |
| Defendant. | ) | |

**PLAINTIFF'S REPLY MEMORANDUM
IN SUPPORT OF SUMMARY JUDGMENT**

Attorneys for Plaintiff Walgreen Co.

LEYDIG, VOIT & MAYER, LTD.
Mark J. Liss (IL Bar No. 6181002)
Tamara A. Miller (IL Bar No. 6237169)
Caroline L. Stevens (IL Bar No. 6274252)
Two Prudential Plaza, Suite 4900
Chicago, Illinois 60601
Tel: (312) 616-5600
Fax: (312) 616-5700

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ ii

I.      INTRODUCTION ............................................................................................. 1

II.     ARGUMENT..................................................................................................... 1

      A.    There is No Heightened Standard for Summary Judgment in a Trademark Case .. 1

      B.    Summary Judgment in Walgreens' Favor is Warranted Under Any Likelihood of
           Confusion Standards ............................................................................... 2

      C.    As the Fact-Finder, this Court Can Weigh All the Likelihood of Confusion
           Factors ............................................................................................... 3

           1.   The Marks are the Marks, and they are Dissimilar ............................. 3

           2.   This Court Can Decide the Impact of the Lack of Any Actual Confusion ....... 5

           3.   This Court Can Assess Intent Based on the Undisputed Facts ................... 12

           4.   This Court Can Draw its Own Conclusions from the Undisputed Evidence of
              the Degree of Care Exercised by Consumers .................................. 14

III.    CONCLUSION................................................................................................ 15

# TABLE OF AUTHORITIES

### Cases

*AHP Subsidiary Holding Co. v. Stuart Hale Co.,*
1 F.3d 611, 616 (7th Cir. 1993) ............................................................ 1, 7

*AM General Corp. v. DaimlerChrysler Corp.,*
311 F.3d 796, 829 (7th Cir. 2002) ............................................................ 12

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 248 (1986) ............................................................ 1

*Anheuser-Busch, Inc. v. Mambo Seafood #1,*
2008 WL 4674603, at *9 (T.T.A.B. Sept. 22, 2008) ............................ 9, 12

*Ava Enters., Inc. v. Audio Boss USA, Inc.,*
2006 WL 173465, at *4-5 (T.T.A.B. Jan. 12, 2006) ............................ 9

*Barbecue Marx, Inc. v. 551 Ogden, Inc.,*
235 F.3d 1041, 1044 (7th Cir. 2000) ............................................ 3, 13, 15

*Beneficial Corp. v. Beneficial Capital Corp.,*
529 F. Supp. 445, 450-51 (S.D.N.Y. 1982) ............................................ 8

*Bose Corp. v. QSC Audio Prods., Inc.,*
293 F.3d 1367, 1377 (Fed. Cir. 2002) ............................................ 9

*Boston Red Sox Baseball Club L.P. v. Sherman,*
2008 WL 4149008, at *10 (T.T.A.B. Sept. 9, 2008) ............................ 3

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.,*
973 F.2d 1033, 1047 (2d Cir. 1992) ............................................ 13

*CAE, Inc. v. Clean Air Eng'g, Inc.,*
267 F.3d 660, 678-83 (7th Cir. 2001) ............................................ 2, 6, 12

*Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.,*
659 F.2d 695, 704 (5th Cir. 1981) ............................................ 5

*Conopco, Inc. v. May Dep't Stores Co.,*
46 F.3d 1556, 1563-64 (Fed. Cir. 1994) ............................................ 14

*Cortex Corp. v. W.L. Gore & Assocs., Inc.,*
1 F.3d 1253, at *1 (Fed. Cir. 1993) ............................................ 4

*Covia P'ship v. Northwest Airlines, Inc.,*
1997 WL 652324, at *3 (N.D. Ill. Oct. 7, 1997) ............................ 6

*Cumberland Packing Corp. v. Monsanto Co.,*
140 F. Supp. 2d 241, 254 (E.D.N.Y. 2001) ............................................ 6

*Eli Lilly & Co. v. Natural Answers, Inc.,*
233 F.3d 456, 465 (7th Cir. 2000) ............................................ 13, 14

ii

*Emery v. Nat'l Life & Accident Ins. Co.,*
   614 F. Supp. 167, 170 (S.D. Ill. 1985)......................................................................... 1

*Henri's Food Prods. Co. v. Kraft, Inc.,*
   717 F.2d 352, 355-56 (7th Cir. 1983) ............................................................ 3, 11, 12

*Kirk v. Home Indem. Co.,*
   431 F.2d 554, 560 (7th Cir. 1970) .......................................................................... 1

*Klein-Becker USA, LLC v. Product Quest Mfg., Inc.,*
   429 F. Supp. 2d 1248, 1258 (D. Utah 2005)......................................................... 13

*Libman Co. v. Vining Indus.,*
   69 F.3d 1360, 1361 (7th Cir. 1995), *cert. denied*, 517 U.S. 1234 (1996)............... 6, 13

*MB Fin. Bank, N.A. v. MB Real Estate Servs.,*
   L.L.C., 2003 WL 22765022, at *7 (N.D. Ill. Nov. 21, 2003) .................................. 12

*McGraw-Edison Co. v. Walt Disney Prods.,*
   787 F.2d 1163 (7th Cir. 1986) ............................................................................... 7

*McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC,*
   511 F.3d 350, 364-35 (3rd Cir. 2007)..................................................................... 14

*Nike, Inc. v. "Just Did It" Enters.,*
   6 F.3d 1225, 1230-31 (7th Cir. 1993) .................................................................... 15

*Oest v. Ill. Dept. of Corrections,*
   240 F.3d 605, 610 (7th Cir. 2001) .......................................................................... 1

*Olay Co. v. Avon Prods., Inc.,*
   1973 WL 19958, 178 U.S.P.Q. 502, 504-05 (T.T.A.B. May 9, 1973) ...................... 3

*Oreck Corp. v. U.S. Floor Sys., Inc.,*
   803 F.2d 166, 173 (5th Cir. 1986), *cert. denied*, 481 U.S. 1069 (1987).................... 6

*Packman v. Chicago Tribune Co.,*
   267 F.3d 628, 644 (7th Cir. 2001) .......................................................................... 13

*Pfizer Inc. v. Perrigo Co.,*
   988 F. Supp. 686, 699 (S.D.N.Y. 1997)........................................................... 6, 13, 14

*Pignons S.A. de Mecanique de Precision v. Polaroid Corp.,*
   498 F. Supp. 805, 810 (D. Mass. 1980), *aff'd*, 657 F.2d 482 (1st Cir. 1981)............ 1

*RE/MAX Int'l Inc. v. Singh,*
   2008 WL 5256414, at *4-6 (T.T.A.B. Dec. 10, 2008)........................................... 3

*Reed-Union Corp. v. Turtle Wax, Inc.,*
   77 F.3d 909, 912 (7th Cir. 1996) ............................................................................ 10

*Simon & Schuster, Inc. v. Dove Audio, Inc.,*
   970 F. Supp. 279, 291, 298-99 (S.D.N.Y. 1997) .................................................... 12

*Smithkline Beckman Corp. v. Proctor & Gamble Co.,*
   591 F. Supp. 1229, 1244 (N.D.N.Y. 1984), *aff'd*, 755 F.2d 914 (2d Cir. 1985) ...... 14

*Solar Elecs., Inc. v. Tandy Corp.*,
    1987 WL 28294, at *1 (N.D. Ill. Dec. 16, 1987) ........................................................ 7

*Spraying Sys. Co. v. Delavan, Inc.*,
    975 F.2d 387, 394, 394 n.5, 396 (7th Cir. 1992) ............................................... 7, 8, 11

*Starbucks U.S. Brands LLC v. Ruben*,
    2006 WL 402564, 78 U.S.P.Q.2d 1741, 1753 (T.T.A.B. Feb. 9, 2006) ..................... 9

*Sullivan v. CBS Corp.*,
    2002 WL 554506, at *9-10 (N.D. Ill. Apr. 15, 2002), *aff'd*, 385 F.3d 772 (7th Cir. 2004) 11, 14

*Team Air Express, Inc. v. Alliance Shippers,*
    *Inc.*, 2007 WL 4438620, at *13-15 (T.T.A.B. Dec. 11, 2007) ................................... 9

*Trilink Saw Chain, LLC v. Blount, Inc.*,
    583 F. Supp. 2d 1293, 1315 n. 9 (N.D. Ga. 2008) ..................................................... 4

*Union Carbide Corp. v. Ever-Ready Inc.*,
    531 F.2d 366 (7th Cir. 1976), *superseded by rule on other grounds,* Fed. R. Civ. P. 52(a)....... 9

*Universal City Studios, Inc. v. Nintendo Co.*,
    746 F.2d 112, 118 (2d Cir. 1984).............................................................................. 8

*Universal Money Ctrs., Inc. v. AT&T Co.*,
    22 F.3d 1527, 1534-36, 1539 (10th Cir. 1994), *cert. denied*, 513 U.S. 1052 (1994) .............. 11

*WMH Tool Group, Inc. v. Woodstock Int'l, Inc.*,
    2009 WL 971425, *slip op.*, at *5 (N.D. Ill. Apr. 8, 2009) ........................................ 1

### Statutes

15 U.S.C. § 1071(a) ....................................................................................................... 2

15 U.S.C. § 1071(b) ....................................................................................................... 2

15 U.S.C. § 1071(b)(1) .................................................................................................. 2

### Rules

Fed. R. Civ. P. 52(a) ..................................................................................................... 9

Fed. R. Civ. P. 56 .......................................................................................................... 1

L.R. 56.1 ........................................................................................................................ 1

## I.    INTRODUCTION

The finder of fact in this case is the Court, not a jury. At this time, the Court has all of the information it needs to weigh the likelihood of confusion factors and decide the case on the merits. Wyeth has failed to identify any disputed material fact that would require a trial, and summary judgment in favor of Walgreens should be granted.

## II.    ARGUMENT

**A.    There is No Heightened Standard for Summary Judgment in a Trademark Case**

In ruling on this motion, the Court must apply the traditional standards of Fed. R. Civ. P. 56, just as it would in any other case. However, as the Seventh Circuit has noted, "[w]ith the ever increasing burden upon the judiciary, persuasive reasons exist for the utilization of summary judgment procedure whenever appropriate." *Kirk v. Home Indem. Co.*, 431 F.2d 554, 560 (7th Cir. 1970). Logically, "when nothing further will be gained by trial which will aid in the Court's determination of the matter, the Court should be free to decide the matter on summary judgment and save the litigants the time and expense of trial." *Emery v. Nat'l Life & Accident Ins. Co.*, 614 F. Supp. 167, 170 (S.D. Ill. 1985).

Further, a factual dispute is "material" only when it "might affect the outcome of the suit under the governing law." *Oest v. Ill. Dept. of Corrections*, 240 F.3d 605, 610 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Where, as here, the material facts are uncontested,[1] and a trial is not likely to develop additional evidence, summary judgment is proper.[2] *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 498 F. Supp. 805, 810 (D. Mass. 1980), *aff'd*, 657 F.2d 482 (1st Cir. 1981).

---

[1] To create the illusion of many disputed facts, Wyeth responded to many of the paragraphs in Walgreens' Statement of Facts (including non-material facts) in violation of L.R. 56.1, as detailed in the "Objections to Wyeth's Responses to Plaintiff's Statement of Undisputed Material Facts" attached hereto as Ex. 1.

[2] Wyeth cites *WMH Tool Group, Inc. v. Woodstock Int'l, Inc.*, 2009 WL 971425, *slip op.*, at *5 (N.D. Ill. Apr. 8, 2009) (Ex. 2) for the proposition that "summary judgment is not appropriate where the plaintiff has shown that differences between the parties as to any likelihood of confusion factors creates a genuine material issue of triable fact." (Wyeth's Memorandum of Law in Opposition p. 3 (hereinafter "Opp. Bf.")) However, the "differences between the parties" in *WMH* were conflicting facts, and not simply conflicting arguments as to undisputed facts. *Id.* at *4. Further, the *WMH Tool* case and the case of *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 616 (7th Cir. 1993) cited therein were jury cases at the time those summary judgment decisions were rendered. (Ex. 3, for a Declaration by Angela Baylin and Exs. 3-A and 3-B, for docket records).

1

**B.** **Summary Judgment in Walgreens' Favor is Warranted Under Any Likelihood of Confusion Standards**

Neither party could identify any Seventh Circuit authority addressing the question of what law/standards a district court should follow in an appeal of a decision by the Trademark Trial and Appeal Board ("TTAB"), where there is no ancillary claim of infringement. The closest precedent is the *CAE* case, where the Seventh Circuit considered real-world circumstances in deciding questions of registrability on appeal from the TTAB and infringement; it did not conduct two separate analyses relative to these questions. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 678-83 (7th Cir. 2001) (considering factors such as the diverse nature of Opposer's other businesses and the resulting impact on consumer perceptions, and the other words actually used with the mark CAE). It seems obvious that the standards used by a district court considering registrability in a TTAB appeal should not be different due to the happenstance that there is no infringement claim asserted on appeal. Nevertheless, from Walgreens' point of view, it is immaterial whether or not this Court takes into account extrinsic evidence of actual usage. Such evidence confirms the TTAB should be reversed, but is not outcome-determinative. (Memorandum of Law in Support of Summary Judgment p. 19, n.9 (hereinafter "Mov. Bf.")).

In contrast, Wyeth strenuously argues that this Court should ignore all extrinsic evidence of actual usage, and constrain its analysis solely to the marks in the application and registration at issue. (Opp. Bf. pp. 4-5). Following Wyeth's argument, this Court would be bound by Federal Circuit precedent, rather than the Seventh Circuit, including in this Court's *de novo* review of new evidence. Wyeth argues that "there is nothing in 15 U.S.C. § 1071(b) providing for a change in the legal standards governing registration when a TTAB decision is appealed to a district court." (Opp. Bf. p. 5). On the flip side, however, 15 U.S.C. § 1071(a) and (b) provide the option of appealing to *either* the Federal Circuit or a district court, and therefore its drafters did not appear to intend for a district court to be bound by Federal Circuit precedent. Indeed, there is nothing in 15 U.S.C. § 1071(b)(1) indicating the district courts should apply the standards of any authority other than their normal reviewing courts (here, the Seventh Circuit

2

where any appeal of this Court's decision would lie). In any event, confusion is not likely no matter which standard this Court applies.

### C.     As the Fact-Finder, this Court Can Weigh All the Likelihood of Confusion Factors

Wyeth in its Opposition Brief repeatedly references the fact that for the purpose of this motion, Walgreens does not dispute that the parties' goods are identical and sold through overlapping channels of trade, or that ALAVERT is a strong mark. (Opp. Bf. pp. 1, 6, 7, 20). Wyeth also argues that the *DuPont* factor considering the number and nature of similar marks in use on similar goods weighs in its favor. (Opp. Bf. p. 7).

Certainly, there are cases finding no likelihood of confusion even though the senior user's mark was well known, the parties' marks shared common elements, and the goods or services were identical or closely related. *See, e.g., RE/MAX Int'l Inc. v. Singh*, 2008 WL 5256414, at *4-6 (T.T.A.B. Dec. 10, 2008) (Ex. 4) (confusion not likely between well-known mark REMAX and SAVEMAX for real estate services); *Henri's Food Prods. Co. v. Kraft, Inc.*, 717 F.2d 352, 355-56 (7th Cir. 1983) (confusion not likely between MIRACLE WHIP and YOGOWHIP for salad dressing); *Olay Co. v. Avon Prods., Inc.*, 1973 WL 19958, 178 U.S.P.Q. 502, 504-05 (T.T.A.B. May 9, 1973) (Ex. 5) (confusion not likely between OLAY and OLAND for skin creams/personal toiletries). Moreover, a finding of likelihood of confusion is not compelled simply because a certain number of factors favors one party. A court, in its discretion, can assign varying weights to factors in different cases, *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1044 (7th Cir. 2000), and even one factor can play a dominant role in the analysis. *See Boston Red Sox Baseball Club L.P. v. Sherman*, 2008 WL 4149008, at *10 (T.T.A.B. Sept. 9, 2008) (Ex. 6) (dissimilarity of marks dispositive). Notably, however, the Seventh Circuit views the three most important factors as any evidence of actual confusion (or lack thereof), similarity (or dissimilarity) of marks, and intent. *Barbecue Marx*, 235 F.3d at 1044.

### 1.     The Marks are the Marks, and they are Dissimilar

Wyeth claims Walgreens adopted "two alternative lines of attack" to show the marks are

3

not similar, namely, (1) arguing that WAL-VERT is part of a family of Walgreens' "WAL" marks and therefore could not be deemed similar to ALAVERT; and (2) relying on the testimony of a linguistic expert, Dr. Butters. (Opp. Bf. p. 9). To set the record straight, Walgreens did not even mention its other "WAL-" marks in addressing this factor, (Mov. Bf. pp. 10-14), and Walgreens specifically noted that "[e]ven without the benefit of Dr. Butters' opinion, this Court can readily conclude that the TTAB's assessment of this factor was not supported by 'substantial evidence' and should be set aside." (Mov. Bf. p. 14 n.7).

Walgreens did argue the TTAB majority's assessment of this factor was not supported by "substantial evidence" for various reasons. The TTAB made directly contradictory statements, namely: (1) the marks are similar in appearance and sound (Maj. Op. p. 25); and (2) the marks differ in appearance and sound (Maj. Op. p. 24; Mov. Bf. pp. 10-11). Wyeth could not reconcile these statements. The TTAB majority placed an undue focus on "VERT", even though marks are to be compared in their entireties and not dissected, and usually consumers view the beginnings of marks as the most important or prominent. (Mov. Bf. pp. 11-12). The TTAB majority also failed to address the impact of the hyphen in WAL-VERT, the different number of syllables, the different first letters, the different pronunciations of the "WAL" and "AL" at the beginnings of the marks, the "A" in the middle of ALAVERT, and the different meanings of the marks when considered in their entireties. (Mov. Bf. p. 13). Wyeth argued as to certain of these points,[3] but it could not account for the TTAB majority's failure to even address them. Wyeth has not shown the TTAB majority's assessment of this factor was supported by substantial evidence.

For all the reasons Walgreens identified in its Memorandum in Support, WAL-VERT and

---

[3] For example, Wyeth cited *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1315 n. 9 (N.D. Ga. 2008) as "legal precedent" that one party's use of a hyphen is insignificant. (Opp. Bf. p. 9, n.7). A Georgia district court case is hardly precedential here. Moreover, other courts have deemed the use of a hyphen by one party to be significant. For example, *Cortex Corp. v. W.L. Gore & Assocs., Inc.*, 1 F.3d 1253, at *1 (Fed. Cir. 1993) (Ex. 7) involved marks which are more analogous to the instant case, namely, GORE-TEX and CORTEX, and the court found that "[t]he hyphen clearly splits Gore's mark into two separate parts".

ALAVERT are simply too dissimilar to give rise to confusion. (Mov. Bf. pp. 10-14).

## 2.    This Court Can Decide the Impact of the Lack of Any Actual Confusion

The parties do not dispute there is no evidence of actual confusion, (Opp. Bf. pp. 11, 13), only the inferences and conclusions that should be drawn from the lack of such evidence. Wyeth argues that the lack of actual confusion evidence is unremarkable and understandable, (Opp. Bf. pp. 11, 12), relying on a Fifth Circuit case, namely, *Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 704 (5th Cir. 1981), for the proposition that because of the nature of the parties' products, "the odds of any consumer realizing they have been confused are very low." (Opp. Bf. p. 12). However, the *Chevron* court simply noted that because of the nature of the parties' inexpensive lawn and garden products, it would be hard to *detect* instances of actual confusion. *Id.* at 704 (emphasis added). Nonetheless, the *Chevron* court still weighed the absence of actual confusion evidence in the junior user's favor. *Id.* at 705. In contrast, Walgreens argues that the total lack of confusion evidence here is extremely probative, considering the tremendous opportunity for confusion to have arisen, ████████████████

████████████████████████████████████████████████████

████████████████████████████  (Mov. Bf. pp. 8-9, 18-19).

Wyeth misleadingly suggests the only way for a consumer to inform Walgreens of any confusion would be to tell someone at a store. Wyeth argues there is conflicting testimony by two Walgreens employees as to whether reports of confusion to store employees would be reported to the corporate office, and that this creates a genuine issue of material fact. (Opp. Bf. p. 13, and n.11; Wyeth's Counter-Statement to Walgreens' Facts ¶ 70 (hereinafter "Resp. Facts")). First, to clarify, ████████████████████████

████████████████████████████████████████. Second, this testimony is hardly

5

outcome-determinative.[4] *See CAE,* 267 F.3d at 677 ("Factual disputes are...material only when they might affect the outcome of the suit...") (internal citations omitted). It is undisputed Walgreens routinely receives telephone calls, mail, and emails about products (Resp. Facts ¶ 70), records of such communications are kept (Resp. Facts ¶ 70), and Walgreens affirmatively reviewed its records for confusion. (Resp. Facts ¶ 71).

   This Court can readily decide whether the total lack of actual confusion evidence here is probative without a trial, and without consideration of the parties' surveys. Consumer surveys are used to attempt to gauge the *predictiveness* of confusion. (*See, e.g.,* Opp. Bf. pp. 14-15, characterizing Dr. Simonson's survey as something providing a *prediction*). While survey designs attempt to "replicate" marketplace conditions, by definition surveys involve a simulation. This Court need not rely on surveys by paid experts because it can rely on the results of the real-life test that has already occurred over almost five years of concurrent use, namely, zero confused. No survey can change the fact that no confusion has come to light despite the true opportunity for it to have done so. *See Cumberland Packing Corp. v. Monsanto Co.,* 140 F. Supp. 2d 241, 254 (E.D.N.Y. 2001) (finding plaintiff's survey especially weak since plaintiff could not show any evidence of actual confusion despite four years' concurrent use); *see also, Libman Co. v. Vining Indus.,* 69 F.3d 1360, 1361 (7th Cir. 1995), *cert. denied,* 517 U.S. 1234 (1996) (where defendant sold several hundred thousand units, "yet there is no evidence that any consumer ever [was confused]; if confusion were likely, one would expect at least one person out of this vast multitude to be confused, or more precisely one would expect [plaintiff] to have been able to find one such confused person."); *Pfizer Inc. v. Perrigo Co.,* 988 F. Supp. 686, 699 (S.D.N.Y. 1997) (no confusion evidence strongly suggested no likelihood of confusion where millions of products were sold side-by-side over 20 months); *Oreck Corp. v. U.S. Floor Sys.,*

---

[4] In support of this argument, Wyeth cites *Covia P'ship v. Northwest Airlines, Inc.,* 1997 WL 652324, at *3 (N.D. Ill. Oct. 7, 1997) (Ex. 8) for the proposition that where testimony of witnesses conflicted on a material fact, the issue of their credibility required resolution at trial. Not surprisingly, the conflicting witnesses in *Covia* were on *opposite sides* of the case, not the *same side. Id.* at *3-6 (emphasis added). The subject of the disputed testimony in *Covia* was also clearly material, as it was extrinsic evidence used to help the fact-finder interpret ambiguous key terms in a contract. *Id.*

*Inc.*, 803 F.2d 166, 173 (5th Cir. 1986), *cert. denied*, 481 U.S. 1069 (1987) (no confusion evidence after seventeen months of concurrent use in partially overlapping markets "highly significant").

Wyeth argues that the conflicting surveys here, together with the credibility of the parties' respective experts, precludes summary judgment. (Opp. Bf. p. 15). Wyeth's reliance on *AHP*, 1 F.3d at 618 and *Solar Elecs., Inc. v. Tandy Corp.*, 1987 WL 28294, at *1 (N.D. Ill. Dec. 16, 1987) for this proposition is misplaced, since in those cases the fact-finder was a jury at the time the summary judgment decisions issued.[5] (Ex. 10, Calkins Decl., ¶¶ 3-4 and Ex. 10-A; Ex. 3, Baylin Decl., ¶¶ 5-6 and Ex. 3-B). In neither *AHP Subsidiary* nor *McGraw-Edison Co. v. Walt Disney Prods.*, 787 F.2d 1163 (7th Cir. 1986), did the Seventh Circuit hold that as a general rule, a survey creates a genuine issue of material fact precluding summary judgment. To the contrary, the Seventh Circuit has held that if a survey is flawed and only of minimal probative value, summary judgment can be appropriate. *Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 394, 394 n.5, 396 (7th Cir. 1992) (affirming summary judgment in favor of the defendant, where the surveys presented by plaintiff were flawed and were of only minimal probative value). In *McGraw,* the Seventh Circuit criticized the district court's decision to "ignore" and "improperly disregard" plaintiff's survey, rather than afford it less weight due to its flaws.[6] *Id.* at 1172. The defendants in *McGraw* had provided no evidence relative to the "actual confusion" factor, such as showing no actual confusion had arisen despite a meaningful opportunity for it to have done so, or submitting its own survey. *Id.* at 1171-73. When the Seventh Circuit in *McGraw* concluded the "actual confusion" factor presented a material question of fact, it was in the context of comparing the plaintiff's survey results to the *total lack* of evidence presented by defendant. *Id.* In contrast, here Walgreens has made a substantial showing both in terms of the

---

[5] *Solar Elecs.,* 1987 WL 28294, at *1 (Ex. 9) is further distinguishable since it was a patent case in which an expert for each side was to render opinions on the questions of obviousness and patent infringement. The jury demand in *AHP Subsidiary* was eventually stricken, but only after remand following the summary judgment ruling. (Ex.3, Baylin Decl., and Ex. 3-B).

[6] Similarly, in *AHP Subsidiary*, the Seventh Circuit stated the survey's shortcomings should be evaluated by the trier of fact (in that case, a jury, whereas in this case, this Court). *AHP Subsidiary,* 1 F.3d at 618.

particular probativeness of the lack of actual confusion evidence, and through its own survey. There is no dispute as to what the surveys were, what questions were asked, what answers were given, and what conclusions were made by each expert based on the data. From this unambiguous record, this Court can draw its own conclusions.

Wyeth's survey, just like the survey in *Spraying Systems*, is so badly flawed it does not create a genuine issue of fact. *Spraying Sys.*, 975 F.2d at 394, 394 n.5, 396; *Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 118 (2d Cir. 1984) (sustaining summary judgment in defendant's favor and finding that plaintiff's flawed survey did not create a question of fact precluding summary judgment in a non-jury case). Wyeth's expert, Mr. Mantis, utilized a variation of the "*Squirt*" survey format. Survey respondents were shown a card with WAL-VERT on it, then a card with ALAVERT on it, and then asked questions. Wyeth claims this survey design comports with TTAB precedent, and is suitable here because the parties' products are sold side-by-side,[7] (Opp. Bf. p. 14), and ALAVERT has a ████████████████ ████████. (Ex. 11, Mantis dep. May 21, 2009, p. 34). Wyeth has reason to be defensive: The "sequential" design utilized by Mr. Mantis is inherently highly leading in nature. *See, e.g., Beneficial Corp. v. Beneficial Capital Corp.*, 529 F. Supp. 445, 450-51 (S.D.N.Y. 1982); *Universal City*, 746 F.2d at 118. In fact, Mr. Mantis previously testified in another matter that "many courts have rejected the sequential design." (Ex. 11, Mantis dep. May 21, 2009, pp. 38, 193-95, and Ex. 11-A). He also admitted that he only uses the design he crafted for Wyeth less than 10% of the time, choosing to employ the "Ever-Ready" format (used by Walgreens' expert Dr. Simonson) approximately 90% of the time. (Ex. 11, Mantis dep. May 21, 2009, pp. 36-38). In an "Ever-Ready" study, respondents in the test cell are only shown a card containing the accused mark. Therefore, unlike Wyeth's survey design, respondents are not led to certain answers by virtue of the format, nor inherently encouraged to engage in matching. The "Ever-

---

[7] Wyeth would have this Court consider the side-by-side sales of the parties' goods for the purpose of justifying the "sequential" survey design, but disregard the side-by-side sales for the purpose of evaluating the potential for real-life confusion. Wyeth cannot have it both ways.

Ready" format is widely accepted by both courts and the TTAB, *Union Carbide Corp. v. Ever-Ready Inc.*, 531 F.2d 366 (7th Cir. 1976), *superseded by rule on other grounds*, Fed. R. Civ. P. 52(a); *Starbucks U.S. Brands LLC v. Ruben*, 2006 WL 402564, 78 U.S.P.Q.2d 1741, 1753 (T.T.A.B. Feb. 9, 2006) (Ex. 12); *Anheuser-Busch, Inc. v. Mambo Seafood #1*, 2008 WL 4674603, at *9 (T.T.A.B. Sept. 22, 2008) (Ex. 13),

Wyeth attempts to defend Mr. Mantis' design of its survey by pointing to *Team Air Express, Inc. v. Alliance Shippers, Inc.*, 2007 WL 4438620, at *13-15 (T.T.A.B. Dec. 11, 2007) (Ex. 15).[8] (Opp. Bf. p. 14). In *Team Air*, the TTAB rejected an "Ever-Ready" survey by Mr. Mantis. *Id.* at *15. Wyeth implicitly suggests that because the "Ever-Ready" format was rejected in *Team Air,* it would not be acceptable here. But in *Team Air*, the petitioner's mark, directed to niche consumers, was apparently little known and scantly advertised (having been the subject of only "hundreds of thousands" of dollars in advertising expenditures over the course of 28 years). *Id.* at *6. The TTAB concluded that in such circumstances, the "Ever-Ready" survey "[a]t most . . . proves that the survey respondents had no preexisting knowledge of petitioner or its marks." *Id.* at *15. In contrast, here Wyeth characterizes ALAVERT as "one of the nation's top-selling, best-known brands of over-the-counter allergy treatment products", (Opp. Bf. p. 20), and "famous." (Resp. Facts ¶ 11).

. (Resp. Facts ¶¶ 22-23). The fact is, if consumers, upon viewing WAL-VERT, were going to confuse it in some manner with

---

[8] In *Ava Enters., Inc. v. Audio Boss USA, Inc.*, 2006 WL 173465, at *4-5 (T.T.A.B. Jan. 12, 2006) (Ex. 16), the mark was not famous and Applicant raised no objections to the survey; therefore, it is hardly surprising that the TTAB did not fault the format. *Bose Corp. v. QSC Audio Prods., Inc.*, 293 F.3d 1367, 1377 (Fed. Cir. 2002) did not even involve a survey and does not state that goods in an application and registration are presumed to be sold side-by-side. (Opp. Bf. p. 14).

ALAVERT, then the more objective "Ever-Ready" study would have reflected that. Mr. Mantis' use of such an inherently leading design for Wyeth was wholly unjustified.

The design of Mr. Mantis' survey is flawed also due to the control, which was particularly inappropriate in the context of his design. Respondents in the control cell were shown a card with WAL-DRYL on it, then a card with ALAVERT, and then asked questions. There is nothing to match as between WAL-DRYL and ALAVERT (unlike WAL-VERT and ALAVERT which both contain "VERT"). As stated by Walgreens' rebuttal expert Dr. Ross, "There should be no doubt as to the outcome of this survey design flaw in Mr. Mantis' survey." (Ex. 17, Ross rebuttal report, ¶ 19). The fact that a net of 28.1% of people could see some similarity between WAL-VERT and ALAVERT, where the control cell presented respondents with WAL-DRYL and ALAVERT, is not probative evidence of confusion.[9] In an attempt to defend Mr. Mantis' control, Wyeth cites *Reed-Union Corp. v. Turtle Wax, Inc.*, 77 F.3d 909, 912 (7th Cir. 1996) (Opp. Bf. p. 15, n.15), where the parties' marks were NU FINISH and FINISH 2001, and the control mark was PRISM. However, *Reed-Union* involved both trademarks *and* trade dress, and the survey stimuli were actual products. *Id.* at 911-12. One party's survey used ARMOR ALL as the brand name on the control product, and the other used PRISM. *Id.* at 912. The district court merely preferred the study using PRISM, since like the products at issue, the PRISM control product did not prominently bear the name of the manufacturer, and because use of a well-known mark like ARMOR ALL on a control introduced bias. *Id.* This was hardly an endorsement of use of the word mark PRISM as a control.

Moreover, the coding of responses by Mr. Mantis is so highly suspect that his so-called "data" based on the coding, and his conclusions therefrom, should be totally disregarded. Mr. Mantis coded a net of 28.1% (after subtracting for the control) of the 204 respondents in his test

---

[9] Mr. Mantis criticized a "sequential" design in a case involving the marks LIFTMASTER and LYNX MASTER. Mr. Mantis in his rebuttal report stated, "GENIE does not serve the essential purpose of a control. It could have been reasonable [sic] predicted that no respondent would have said that GENIE and LIFTMASTER are put out by the same company or are associated because of the similarity of their names." (Ex. 17, Ross report, ¶ 20 and Ex. C thereto, p. 13). The same is true with regard to WAL-DRYL and ALAVERT.

cell as somehow confused. (Mantis Dec. Ex. A, p. 2; Opp. Bf. pp. 13-14). Even a cursory look

at Tables 4 and 5 in Mr. Mantis' survey (Mantis Dec. Ex. A, pp. 15-28) shows that Mr. Mantis'

characterization of many responses in the test cell as being "name-related"—and therefore

evidencing confusion—made no sense. Consider just a few examples:

- "Based on the name Wal-Vert and Alavert." (which is all they saw) (Mantis survey, p. 18, No. 027);
- "Because they look similar. They both look like Wal-Mart." (Mantis survey, p. 18, No. 023);
- "I think they are made by the same company because Alavert probably makes it for Wal-Mart." (Mantis survey, p. 18, No. 029);
- "Feel like Wal-Vert is generic next to Alavert." (Mantis survey, p. 19, No. 048);
- "The last letters are the same." (Mantis survey, p. 21, No. 070);[10]
- "Because of the name." (Mantis survey, p. 22, No. 099); and
- "Wal-vert could be the generic of Alavert." (Mantis survey, p. 22, No. 101).

The same is true for Mr. Mantis' coding of the control cell responses. (Mantis survey, pp. 15-16

and 47-48 (Tables 4 and 8)).

Because it is so flawed, Wyeth's survey does not create a genuine issue of material fact

precluding summary judgment. *See Spraying Systems,* 975 F.2d at 394, 396; *Universal Money*

*Ctrs., Inc. v. AT&T Co.,* 22 F.3d 1527, 1534-36, 1539 (10th Cir. 1994), *cert. denied,* 513 U.S.

1052 (1994) (sustaining summary judgment in defendant's favor in a jury case, where

defendant's survey showed 2.6% confusion while plaintiff's telephone poll of 64 people showed

22% confusion, finding that plaintiff could only show *de minimis* evidence of actual confusion,

which was insufficient to establish the existence of a genuine issue of material fact).

Nor do Wyeth's criticisms of Dr. Simonson's survey create a genuine issue of fact. *See*

*Sullivan v. CBS Corp.,* 2002 WL 554506, at *9-10 (N.D. Ill. Apr. 15, 2002), *aff'd,* 385 F.3d 772

(7th Cir. 2004) (Ex. 18) (granting summary judgment in favor of defendants even though

---

[10] It is hardly surprising that after viewing WAL-VERT and ALAVERT on cards and asked questions, many people will point to the matching part (namely, the "VERT") in their answers. However, even if consumers see some similarity between ALAVERT and WAL-VERT because of the "VERT" portion, in the context of Mr. Mantis' leading study without an appropriate control, such answers simply do not indicate a real-life probability of confusion. *See, e.g., Henri's,* 717 F.2d at 360 (even if WHIP in and of itself has secondary meaning relative to the mark MIRACLE WHIP for salad dressing, it was "plain" that YOGOWHIP and MIRACLE WHIP were not likely to be confused).

defendants' likelihood of confusion survey was disputed, after disposing of the rebuttal expert's criticisms and finding no basis for rejecting the survey results). First, this Court need not rely on Dr. Simonson's survey at all to conclude that the "actual confusion" factor weighs heavily in Walgreens' favor, in light of the results of the real-life confusion test. Second, Wyeth's objection to Dr. Simonson's use of the "Ever-Ready" format on the grounds that ████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████.

The results of the real-life test for confusion alone are sufficient to weigh this factor overwhelmingly in favor of Walgreens, regardless of what any survey might predict. Even if despite its leading nature and substantial flaws Wyeth's survey is afforded some minimal probative value, when it is weighed against the results of the real-life confusion test and Walgreens' survey, it clearly does not create a genuine issue of material fact.

### 3. This Court Can Assess Intent Based on the Undisputed Facts

The operative question as to intent is whether Walgreens intended there to be confusion between WAL-VERT and ALAVERT. *See MB Fin. Bank, N.A. v. MB Real Estate Servs., L.L.C.,* 2003 WL 22765022, at *7 (N.D. Ill. Nov. 21, 2003) (citing *CAE*, 267 F.3d at 686) (Ex. 19). "'Passing off' means fraud; it means trying to get sales from a competitor by making consumers think that they are dealing with that competitor, when actually they are buying from the passer off….The intent to compete is not the intent to pass off the product as the competitor's." *AM General Corp. v. DaimlerChrysler Corp.,* 311 F.3d 796, 829 (7th Cir. 2002) (internal citations omitted); *see also, Henri's,* 717 F.2d at 359.

Contrary to Wyeth's argument, this Court as fact-finder can make a determination as to

---

11 ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

12

Walgreens' intent at the summary judgment stage. *Packman v. Chicago Tribune Co.,* 267 F.3d 628, 644 (7th Cir. 2001) (affirming summary judgment in favor of defendants, and finding any prior awareness by defendants of plaintiff's mark did not show fraudulent intent, and defendants' prominent use of their own "Chicago Tribune" masthead above the accused mark demonstrated defendants' intent to promote themselves as the source). Walgreens was aware of ALAVERT when it selected WAL-VERT, (Opp. Bf. p. 16; Resp. Facts ¶ 36), but such knowledge is not enough to establish bad faith. *Barbecue Marx,* 235 F.3d at 1046 (intent factor weighed in defendant's favor, even though defendant knew of plaintiff's mark and discussed the similarity of the parties' names, since "knowledge alone is not enough to show intent on the part of [defendant]," and other factors indicated defendant did not act in bad faith).

Wyeth argues that bad faith is established because Walgreens incorporated the "VERT" suffix into WAL-VERT in order to connote ALAVERT to consumers (Opp. Bf. p. 16), citing *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 465 (7th Cir. 2000). In *Eli Lilly,* however, there was significant evidence of intent to mislead, such as defendant's use of plaintiff's mark in source codes for defendant's own website with the intention of diverting people searching for information on plaintiff's product. *Eli Lilly,* 233 F.3d at 465. There is no such evidence here. *See Libman,* 69 F.3d at 1363 (where defendant decided to "climb on the bandwagon" and sell brooms similar to plaintiff's, the Seventh Circuit stated, "We call that competition, not bad faith, provided there is no intention to confuse, and, so far as [sic] appears, there was none.").

Wyeth would have this Court infer bad faith from the color scheme of the WAL-VERT package, (Opp. Bf. p. 16), but ignore other aspects of packaging that show no intent to confuse, such as repeated and prominent reference to "Walgreens",[12] the language "Compare to ALAVERT® active ingredient" on the front side,[13] and the display of the parties' products side-

---

[12] The prominent placement of a house mark "goes far toward countering any suggestion" that Walgreens intended to confuse its customers as to the source of the product. *See Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.,* 973 F.2d 1033, 1047 (2d Cir. 1992).

[13] Use of "compare to" language shows no intent to deceive. *Pfizer,* 988 F. Supp. at 700; *see also, Klein-Becker USA, LLC v. Product Quest Mfg., Inc.,* 429 F. Supp. 2d 1248, 1258 (D. Utah 2005) (recognizing that "compare to" statements avoid consumer confusion) and cases cited therein.

by-side for immediate comparison.[14] (Opp. Bf. pp. 16-17, 20; Mov. Bf. pp. 7, 19). Moreover, the packages are what the packages are, and if the Court is inclined to consider them, they are at its ready disposal. (Walgreens' Facts ¶¶ 18, 42 and Exs. 8-B, 1-E, and 1-F thereto). The evidence relative to intent is undisputed and can be considered by this Court without a trial.[15]

4. **This Court Can Draw its Own Conclusions from the Undisputed Evidence of the Degree of Care Exercised by Consumers**

There are no disputed material facts relative to the degree of care factor. The parties agree with the TTAB majority's factual findings on this factor, (Opp. Bf. pp. 17-18; Mov. Bf. p. 15; Maj. Op. pp. 19-20), but disagree as to whether it should be deemed neutral in the analysis.

Wyeth argues treatment of this factor as neutral was correct based on *Eli Lilly*, 233 F.3d at 464. (Opp. Bf. p. 19). In *Eli Lilly*, the court found the record contained no evidence showing consumers exercise extraordinary care when purchasing dietary supplements. *Eli Lilly*, 233 F.3d at 464. This finding did not extend to OTC medications, and cases dealing with such goods have found the opposite. *See, e.g., Smithkline Beckman Corp. v. Proctor & Gamble Co.*, 591 F. Supp. 1229, 1244 (N.D.N.Y. 1984), *aff'd*, 755 F.2d 914 (2d Cir. 1985) (recognizing consumer care in purchasing over-the-counter medications). Moreover, contrary to Wyeth's suggestion, goods need not be expensive or the subject of protracted analysis for consumers to exercise a higher degree of care in purchasing them. (Opp. Bf. p. 18, n.18). Instead, this factor must be evaluated on a case-by-case basis. *See McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 364-35 (3rd Cir. 2007) (affirming finding that consumers will exercise heightened care in purchasing artificial sweeteners costing $4.00-$5.00, because such products are often purchased for health reasons, such as blood-sugar disorders, weight loss, fitness, and tooth decay); *Sullivan*, 2002 WL 554506, at *7 (Ex. 18) (finding the degree of care factor strongly favored defendants in

---

[14] Selling a private label product next to the national brand product shows no intent to deceive. *Pfizer*, 988 F. Supp. at 700 (S.D.N.Y. 1997); *see also, Conopco, Inc. v. May Dep't Stores Co.*, 46 F.3d 1556, 1563-64 (Fed. Cir. 1994).

[15] In Wyeth's six depositions of Walgreens employees since July 2005 when this dispute began, no witness has testified Walgreens had an intent to confuse consumers through the use of WAL-VERT. Neither Wyeth nor this Court can reasonably expect anything different at trial.

a case involving music CDs despite the low cost of such items); *Barbecue Marx,* 235 F.3d at 1045 (deeming as "clear error" the district court's weighing of the care factor in favor of the plaintiff where the goods at issue were $20 barbeque dinners); and *Nike, Inc. v. "Just Did It" Enters.,* 6 F.3d 1225, 1230-31 (7th Cir. 1993) (disagreeing with district court's conclusion that people do not exercise a high degree of care in purchasing shirts priced at $19.95-39.95, and pointing out that "[n]either [plaintiff] nor the district court has cited any case where a customer's degree of care depends solely upon price.").

Walgreens in its Memorandum pointed to new evidence relative to the degree of care, consisting of testimony by Wyeth's employees and Wyeth's own market research. (Walgreens' Facts ¶¶ 57-64 and exhibits thereto). The evidence on this factor cannot reasonably be disputed, and shows that consumers exercise heightened care in purchasing allergy medicines and are knowledgeable about and accustomed to seeing private label goods.

### III.  CONCLUSION

The operative question in terms of registrability of WAL-VERT is whether it is likely to cause confusion with ALAVERT.[16] Even when viewing the facts in the light most favorable to Wyeth, and drawing all reasonable inferences in Wyeth's favor, a rational trier of fact (this Court) would conclude without a doubt it is not probable that WAL-VERT will confuse a substantial number of consumers. This is true whether considering the marks in a vacuum, as the TTAB and Federal Circuit would, or in the real world, as the Seventh Circuit would. If this case proceeds to trial, the witnesses would simply testify as to what appears in the declarations and depositions submitted by the parties, and the same documents already before this Court would be proffered. The material facts in this case are well-developed and undisputed, and this Court has before it now all that it needs to make a decision.

---

[16] Strangely, Wyeth argues in its conclusion that "Walgreen's adoption and effort to register WAL-VERT is a blatant attempt to ride on Wyeth's coattails that will substantially undermine the distinctiveness of the ALAVERT trademark." (Opp. Bf. p. 20). The question of whether WAL-VERT will "undermine the distinctiveness of the ALAVERT trademark" (essentially, dilution) is not at issue whatsoever. While Wyeth originally asserted dilution as a basis for its Notice of Opposition, if effectively waived that claim when it failed to even raise it in its TTAB trial brief, or as a counterclaim in this action.

15

Respectfully submitted,

LEYDIG, VOIT & MAYER, LTD.

Date:   July 15, 2009

 s/Mark J. Liss
Mark J. Liss (IL Bar No. 6181002)
Tamara A. Miller (IL Bar No. 6237169)
Caroline L. Stevens (IL Bar No. 6274252)
Two Prudential Plaza, Suite 4900
Chicago, Illinois 60601
Tel: (312) 616-5600
Fax: (312) 616-5700

Attorneys for Plaintiff Walgreen Co.