IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WALGREEN CO., an Illinois corporation, | ) | Civil Action No. 08-cv-05694 |
| | ) | |
| Plaintiff, | ) | Judge W.R. Andersen |
| | ) | Magistrate Judge A. Keys |
| v. | ) | |
| | ) | **DEFENDANT'S OPENING** |
| WYETH, a Delaware corporation, | ) | **STATEMENT** |
| | ) | |
| Defendant. | ) | |

In accordance with the Court's suggestion that the parties dispense with formal pre-trial memoranda and opening statements delivered at the start of trial, in favor of written opening statements submitted to the Court in advance, Wyeth hereby offers the following submission.

The Court is asked to resolve two questions in this case. The first is whether "substantial evidence" supports the conclusion of the Trademark Trial and Appeal Board (the "TTAB") that there is a likelihood of confusion between Wyeth's ALAVERT trademark and the WAL-VERT trademark of plaintiff Walgreen Co. ("Walgreen's"). As Judge Lindberg recognized in his July 27th decision denying summary judgment to Walgreen's, under this deferential standard "substantial evidence" is "such evidence as a reasonable mind might accept as adequate to support a conclusion. Put differently, the Court must decide whether on this record it would have been possible for a reasonable jury to reach the Board's conclusion." (Citations and internal quotations omitted.)

The second question is whether the new evidence offered by the parties, which the Court reviews *de novo*, requires the Court to reach a conclusion different from that of the TTAB.

To resolve these two questions, the Court examines both the old and the new evidence under the framework set forth in the case of *In re E.I. DuPont de Nemours Co.*, 476 F.2d 1357,

1361 (C.C.P.A. 1973), as confirmed by Judge Lindberg in the July 27th Order that governs this case. That decision articulates thirteen factors considered to be relevant to the issue of likely confusion when trademark registration is at issue, but the parties agree with both the decision below and other precedents that not all of these factors are relevant in every case or in this case.

For purposes of its summary judgment motion, Walgreen's conceded, and the Court will so find based on the evidentiary record in the event Walgreen's tries to backtrack on its prior concession, that three *DuPont* factors favor Wyeth, namely: (i) the strength of the ALAVERT trademark; (ii) the parties' goods, which are directly competitive and functionally identical; and (iii) the parties' trade channels, which are also actually and presumptively identical. Walgreen's motion also failed to offer any credible evidence bearing on another *DuPont* factor, "the number and nature of similar marks in use on similar goods," *id.*, 476 F.2d at 1361, thereby confirming both that the strength of the ALAVERT trademark is undiminished by third-party use, and that there is no third-party trademark, registered or unregistered, as similar to ALAVERT as WAL-VERT.

After making these concessions in the most unobtrusive manner possible so as to downplay their impact, Walgreen's spent the remainder of its summary judgment briefing arguing how three other *DuPont* factors (plus the issue of Walgreen's intent, which is not even an enumerated *DuPont* factor) were essentially the only ones worth considering and that, from its perspective, all favored Walgreen's. These arguments were deficient at the summary judgment stage and remain deficient now. The TTAB's conclusions on all of these *DuPont* factors were supported by substantial evidence, and the new evidence only bolsters those prior conclusions.

The first *DuPont* factor that Walgreen's believes will carry it to victory concerns the similarity of the parties' trademarks. At trial, the Court will likely hear a lot from Walgreen's

about how the parties' marks appear on their respective packaging and in their respective advertising accompanied by all sorts of other graphic design and informational elements that supposedly dispel any possibility of confusion, but none of this is relevant to the issue of similarity in this case involving solely the right to federal registration. The issue here is whether WAL-VERT and ALAVERT, in the unadorned block-letter format in which they appear in the parties' registration and application, are similar – not identical, just similar – in terms of their sight, sound <u>or</u> meaning. Looking strictly at the marks in this manner as the law requires, it is apparent to anyone with a pair of eyes and ears that the respective marks are similar in their visual appearance and pronunciation because they have identical VERT suffixes and prefixes that include the letters "AL." As for meaning, Walgreen's has conceded that it adopted WAL-VERT with the intent of connoting ALAVERT to consumers, confirming that ALAVERT and WAL-VERT are similar in terms of their sight, sound <u>and</u> meaning. Given this trifecta, Walgreen's argument that the TTAB's conclusion on the issue of similarity was not supported by substantial evidence is simply not credible.

Of course Walgreen's knows this, which is why it felt it had to offer new "evidence" on this point, in the form of testimony from a linguistic expert who will opine that, notwithstanding what we can all see and hear, the parties' marks are so completely and utterly different that no one of sound mind could possibly think they are similar. This linguistic testimony is absurd on its face in too many respects to enumerate here. It is also decisively rebutted by Wyeth's empirical evidence concerning consumer perceptions of the similarity between WAL-VERT and ALAVERT, which demonstrates not only that a substantial number of consumers think they are similar, but that they attribute that belief to the common VERT suffixes and other similar linguistic elements that Walgreen's linguist hypothesizes are irrelevant, without any supporting

research of his own.  Thus, far from supporting reversal of the TTAB's decision on the issue of the marks' similarity, the new evidence offered by the parties strongly confirms it.

The second *DuPont* factor that Walgreen's argues is so significant as to be dispositive is the absence of evidence of anecdotal instances in which consumers have confused the parties' trademarks notwithstanding the five years in which WAL-VERT has been on the market.  As a legal matter, the absence of evidence of such anecdotal confusion is nowhere close to being dispositive.  *See CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 686 (7th Cir. 2001) ("the most that the absence of evidence of actual confusion [over a twenty-five-year period] can be said to indicate is that the record does not contain any evidence of actual confusion *known to the parties*") (emphasis added).  This is because consumers typically do not announce their thoughts when they buy a product, and some confused consumers may never realize they have been deceived.  Others may discover their mistake, but not take the trouble to let anyone know.  Thus, many factors related to the marketplace explain the absence of anecdotal actual confusion evidence.  *See Tiffany & Co. v. Classic Motor Carriages, Inc.,* 10 USPQ2d 1835, 1843 (TTAB 1989 ("customers might not make inquiry because they simply assume a connection with opposer").

Moreover, as a factual matter, Walgreen's contention that its foolproof record-keeping system would absolutely, positively have captured any instances of actual confusion occurring in the marketplace does not withstand scrutiny, as the TTAB recognized, which is why its determination to treat this *DuPont* factor as neutral was plainly supported by substantial evidence.

Recognizing that the absence of evidence of anecdotal instances of confusion will not be sufficient to tilt this factor in its favor, Walgreen's solution is familiar: more experts.  And not

just one expert this time, but two – one to conduct a survey showing a near total absence of likely confusion and another to criticize the survey Wyeth commissioned reaching the opposite conclusion.  While battles of the experts like the one the Court will witness at trial can be unedifying, and survey research is a field in which methodological and design disputes can be particularly murky, in the end, the arguments concerning the parties' surveys can be distilled to a simple choice between two alternative approaches for measuring consumer perceptions of the WAL-VERT mark.

Walgreen's expert will opine that the design of his survey was superior because he exposed consumers only to WAL-VERT in his test cell without ever showing them ALAVERT, which allowed participants an opportunity to voice confusion based on their reactions to that stimulus alone.  In contrast, Wyeth's expert will opine that his design, in which survey respondents were exposed sequentially to both of the parties marks in a test cell (as well as ALAVERT and WAL-DRYL in a control cell) was appropriate because: (i) the parties' marks appear together in the marketplace, making it important for respondents to view WAL-VERT and ALAVERT together as part of the interviewing process; (ii) Wyeth's market research shows that consumers' ability to recall ALAVERT without prompting, on an unaided basis, is very low, making it important to include ALAVERT in the study in order to provide an accurate measure of confusion; and (iii) recent TTAB precedent has rejected Walgreen's survey design, at least in cases where the senior mark like ALAVERT has low unaided awareness.  Based on these circumstances, Wyeth's survey is significantly more persuasive.  Thus, there is no basis for the Court to reject the TTAB's decision to treat the *DuPont* factor concerned with actual confusion as neutral and, indeed, this factor should favor Wyeth based on the new evidence Wyeth has presented.

Walgreen's last two arguments focus on purchaser sophistication and the issue of its intent, the latter of which is not an enumerated *DuPont* factor but one the TTAB did consider in its decision below. With respect to purchaser sophistication, the TTAB treated this factor as neutral in the likelihood of confusion analysis. Walgreen's argues that consumers of over-the-counter allergy treatment products are so careful about what they purchase that there is no likelihood of confusion between WAL-VERT and ALAVERT, but the Court will hear from Wyeth's witnesses and see in the market research from Wyeth that some consumers are very careful and attentive when purchasing the sort of products at issue in this case, but that more are not. The TTAB's decision to treat this factor as neutral was therefore correct.

As for the issue of intent, the TTAB concluded that, notwithstanding Walgreen's conceded adoption of the WAL-VERT trademark in order to connote ALAVERT to consumers and other evidence showing Walgreen's effort to mimic the ALAVERT packaging, this issue did not favor Wyeth. Wyeth disagrees with this conclusion in light of Walgreen's concession of intent to copy, particularly in view of Walgreen's past history of adopting trademarks that the TTAB has deemed to be confusingly similar to Wyeth's marks. *See Wyeth Holdings Corp. v. Walgreen Co.*, Opp. No. 91151771, 2005 WL 1787247 (T.T.A.B. June 21, 2005).

Weighing the TTAB's conclusions under the deferential standard of review that governs the appellate part of this proceeding and the new evidence offered by the parties that either favors Wyeth or is irrelevant, the Court should, when all is said and done, affirm the TTAB's decision and deny Walgreen's the benefits of a federal registration for WAL-VERT.

Dated: New York, New York
      October 5, 2009

Respectfully Submitted,

DORSEY & WHITNEY LLP

By:      S/

Bruce R. Ewing (*pro hac vice*)
Sandra Edelman (*pro hac vice*)
250 Park Avenue
New York, New York 10177
(212) 415-9200

Peter A. Tomaras (No. 6180423)
WILDMAN, HARROLD, ALLEN &
DIXON LLP
225 West Wacker Drive, Suite 2800
Chicago, Illinois 60606-1229
(312) 201-2000

Attorneys for Defendant Wyeth