IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WALGREEN CO. (an Illinois corporation), Plaintiff, | ) | |
| v. | ) | Civil Action No. 08-cv-5694 |
| | ) | Judge W.R. Andersen |
| WYETH (a Delaware corporation), Defendant. | ) | Magistrate Judge A. Keys |

**OPENING STATEMENT OF WALGREEN CO.**

This Opening Statement is being submitted by Walgreen Co. ("Walgreens").

## I. INTRODUCTION

The question before this Court is whether there is a likelihood of confusion between the marks WAL-VERT and ALAVERT, both used with allergy medicine. Prior to this Appeal, this question was put to the Trademark Trial and Appeal Board ("TTAB") in the context of Wyeth's opposition to Walgreens' application for the mark WAL-VERT. Among a three-judge panel, two Judges concluded there is a likelihood of confusion, and the third concluded there is not. As discussed *infra,* the TTAB Majority's conclusion was not supported by substantial evidence and should be set aside.

It will be shown that the evidence before the TTAB supported the dissenting Judge's conclusion that WAL-VERT is not likely to cause confusion. If WAL-VERT is not likely to cause confusion, it is entitled to registration. New evidence presented in this civil action further supports the dissenting Judge's conclusion, and the TTAB Majority's decision should be reversed.

## II. STANDARD OF REVIEW

An appeal of a TTAB decision to a District Court is both an appeal and a new action which allows the parties to submit new evidence. *CAE, Inc. v. Clean Air Eng'g, Inc.,* 267 F.3d 660, 673 (7th Cir. 2001). This Court's review of the TTAB decision is *de novo* as to the new

evidence. The Court must conduct a meaningful review of the TTAB's findings, and if the Court concludes that any of the TTAB's findings were not supported by "substantial evidence," such findings should be set aside. *Id.* at 675-76.

## III. THE LIKELIHOOD OF CONFUSION FACTORS

Both the Seventh Circuit and the TTAB consider a number factors (most of which overlap) in determining whether confusion is likely between two marks. *See, e.g., Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043-44 (7th Cir. 2000); *In re E.I. DuPont DeNemours & Co.*, 476 F.2d 1357, 1361 (C.C.P.A. 1973). The various factors will be addressed in turn below.

A. Lack of Actual Confusion: The evidence will show that the WAL-VERT and ALAVERT products have been sold side-by-side in thousands of Walgreens stores to the same customers to alleviate the same symptoms for more than five years. (Facts ¶¶ 17, 32, 36 ). **REDACTED**.

Both Walgreens and Wyeth maintain records of customer communications, and Walgreens' store managers are required to report unresolved issues about products to Walgreens' headquarters. Walgreens and Wyeth searched their records for communications and reports concerning consumer confusion but found none.

The TTAB Majority's finding that the absence of actual confusion was of little probative value and that this factor was "neutral" (Maj. Op. p. 21) was not supported by substantial evidence, given the years of side-by-side sales of the products. In a strange twist of reasoning, the TTAB discounted the lack of actual confusion evidence because the opportunity for actual confusion could only arise in actual marketplace conditions, and the marketplace conditions were not specified in the description of goods in Walgreens' application for WAL-VERT (i.e., the description of goods did not specify that WAL-VERT is sold only in Walgreens stores and in packages bearing the house mark "WALGREENS"). (Maj. Op. pp. 20-21). If TTAB precedent followed this reasoning (which it does not), the TTAB would virtually never deem the lack of

actual confusion evidence probative. Actual confusion always arises in the actual marketplace, and marketplace conditions are rarely, if ever, set forth in applications.

The conditions are ideal for actual confusion to occur, if it is to occur at all, but none has, indicating there is no likelihood of confusion in this case. The evidence will show this factor weighs against a finding of likelihood of confusion.

B. Similarity of the Marks: WAL-VERT and ALAVERT are distinguishable with respect to appearance and sound, due to the arrangement of the letters in the marks and a hyphen that literally splits WAL-VERT in half. WAL-VERT begins with the letters "WAL" which sound like the word "wall," whereas ALAVERT begins with the letters "AL" which sound like the man's name "Al". There is an "A" in the middle of ALAVERT not found in WAL-VERT. The marks have a different number of syllables, WAL-VERT having two and ALAVERT having three.

The marks also differ in terms of their meanings. **REDACTED**.

WAL-VERT has no such meaning. Dr. Butters will testify that from a linguistic standpoint, WAL-VERT has no meaning in the English language. **REDACTED**.

The TTAB Majority's finding that the marks are similar was not supported by substantial evidence. In fact, the TTAB Majority's assessment of this factor is flawed on its face. First, it acknowledged that "the marks do differ in appearance and sound…." (Maj. Op. p. 24). Later, it concluded that "based on the full record, including the fact that the goods of the parties are identical, we conclude that WAL-VERT and ALAVERT are similar in appearance, sound, and most notably in connotation and commercial impression." (Maj. Op. p. 25). In addition to these

statements being inexplicably directly contradictory, the identical nature of the parties' goods should not bear on the question of how similar the marks are in appearance and sound.

The TTAB Majority also improperly held that potential purchasers would be likely to recognize the "VERT" portion of the marks and believe that the owner of ALAVERT is associated with WAL-VERT. (Maj. Op. p. 25). Wyeth submitted absolutely no evidence that consumers associate "VERT" with ALAVERT, or that consumers dissect the ALAVERT mark, disregard the "ALA" portion, and focus on "VERT". In fact, the *beginning* of a mark is usually the most important and most prominent in the eyes of the consumer, as the dissenting TTAB Judge pointed out and as the Courts and the TTAB have held. *See, e.g.*, *RE/MAX Int'l Inc. v. Singh*, 2008 WL 5256414, at *4 (T.T.A.B. Dec. 10, 2008) (and cases cited therein) (finding REMAX and SAVEMAX "obviously different" in appearance and pronunciation because of the different beginnings of the marks, and reasoning that if consumers put more emphasis on one part of the applicant's mark, it would be on SAVE because it is the first part of the mark); (Dis. Op. p. 28) (and cases cited therein).

The TTAB Majority also asserted (without citation to the record) that "VERT", as used in WAL-VERT, may suggest the product will avert allergies. (Maj. Op. p. 25). Wyeth did not even suggest this to be the case, but rather, admitted that WAL-VERT had "no preexisting connotations" in the minds of consumers. (Maj. Op. pp. 22-23).

The TTAB Majority rejected the notion that the prefix "WAL-" in WAL-VERT will convey to consumers that the product is a private label product. The TTAB Majority indicated that purchasers may assume WAL-VERT comes from the owner of the national brand but is simply "labeled differently." (Maj. Op. p. 24). In support of this, the TTAB Majority cited a question that a Walgreens attorney asked during a discovery deposition. (Maj. Op. p. 23). It is hornbook law, however, that a deposition question is not evidence. Moreover, the attorney's question did not support the TTAB Majority's conclusion, and the conclusion (and related theories) has been rejected by the Federal Circuit. *See, e.g., Conopco, Inc. v. May Dep't Stores*

*Co.*, 46 F.3d 1556, 1563-65 (Fed. Cir. 1994) (acknowledging that direct competition between national brands and private label store brands within the same stores "has become commonplace and well-known in the marketplace," and that it is counter-intuitive to assume that a manufacturer would sell both a national brand and a private label equivalent to compete with each other).

The TTAB Majority's findings regarding this factor were not supported by substantial evidence. A common sense comparison of the marks at issue demonstrates that the marks are not similar in appearance, sound, or connotation. Expert testimony that Walgreens will offer confirms this is the case.

C. Strength of the ALAVERT Mark: For the record, Walgreens is not asserting (and never asserted) that the ALAVERT mark is descriptive, contrary to the TTAB Majority's statements. (Maj. Op. pp. 15-16). **REDACTED**.

A suggestive mark is typically weaker than a fanciful mark (such as Kodak) or an arbitrary mark (such as Apple computers). *Platinum Home Mortgage Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 727 (7th Cir. 1998). Additionally, the "unaided awareness" of a brand is a crucial factor when determining the fame of a mark in the marketplace. *See, e.g., Carefirst of Md. Inc. v. FirstHealth of Carolinas Inc.*, 77 U.S.P.Q.2d 1492, 1507 (T.T.A.B. 2005). **REDACTED**.

ALAVERT is weak, and the TTAB Majority's characterization of it as strong was not supported by substantial evidence.

D. Customer Sophistication and Care: The evidence will demonstrate that consumers exercise a fairly high degree of care in selecting medicine, including over-the-counter allergy medicine. A number of variables may affect a decision to purchase OTC allergy medicine, including, but not limited to, brand reputation, prior experience with the product, price, value,

duration of efficacy (12- or 24-hour), formulations (chewable, water soluble, taken with water), side effects (non-drowsy, nighttime, possible allergens), symptoms treated (allergies, sinus infections, pain, cough, and cold), and doctor and/or pharmacist recommendations. Allergies can affect a person's quality of life and ability to perform certain tasks, so consumers exercise a fairly high degree of care in purchasing allergy medicine.

The TTAB Majority found that over-the-counter allergy medicines are not bought on "impulse"; that purchasers exercise "a certain degree of care" in purchasing any medication, even medication that is relatively inexpensive; and that "many purchasers may examine the information on the packaging to ensure that the product is suitable for their needs." (Maj. Op. pp. 19-20). Notwithstanding these factual findings, somehow the TTAB Majority characterized this factor as "neutral." (Maj. Op. p. 20). This conclusion was not supported by substantial evidence or even by the TTAB Majority's own findings. The evidence at trial, including a newly available Wyeth study, will show that consumers exercise care in purchasing over-the-counter allergy products and that such care will reduce the likelihood of confusion.

E. <u>Walgreens' Intent</u>: Walgreens did not select the WAL-VERT mark with the intent to create consumer confusion (the *sine qua non* of bad faith intent in a likelihood of confusion analysis), and there is no evidence to the contrary. For over thirty years, Walgreens has used the same branding plan to develop marks and to design packages for its over-the-counter store products, such as WAL-ITIN, WAL-DRYL, and WAL-PHED. (Facts ¶¶ 21, 27). This branding plan is intended to *help* consumers identify the less expensive store brands among the multitude of over-the-counter products on Walgreens' store shelves, not to create confusion. The adoption of WAL-VERT and the design of the package therefor was no different. Like packages for the other "WAL-" products, the WAL-VERT package prominently features the "Walgreens" name and indicates that customers should compare the active ingredient in WAL-VERT to that in ALAVERT. (Wyeth's own package for ALAVERT says "Compare to Claritin & SAVE," indicating that advertising a product as comparable to another does not amount to bad faith).

There is no evidence to support a finding of bad faith.

F. Similarity of the Goods and of the Channels of Trade: Walgreens freely admits that the goods involved in this case are highly similar and directed to the same customers.

G. Weighing the Factors: Each likelihood of confusion factor may play a dominant role from case to case. *See Boston Red Sox Baseball Club L.P. v. Sherman*, 2008 WL 4149008, at *10 (T.T.A.B. Sept. 9, 2008) (holding the dissimilarity of the marks in and of itself was dispositive); *see also Barbecue Marx*, 235 F.3d at 1044 (varying weights can be assigned to factors in different cases). According to the Seventh Circuit, the three most important factors are evidence of actual confusion, any similarity of the marks, and intent. *Barbecue Marx*, 235 F.3d at 1044. The evidence will show that all three of these most important factors weigh heavily in Walgreens' favor. While the parties' products are identical and offered in the same channels of trade, in this case the differences in marks, the good faith of Walgreens, the weakness of the mark ALAVERT, the care exercised by consumers in selecting the relevant goods, and the lack of actual confusion despite substantial opportunity for it to have arisen all substantially weigh in favor of concluding that no confusion is likely.

## IV. WYETH'S THEORETICAL CONCERNS ABOUT CONFUSION AND WALGREENS' NEW EXPERT STUDIES ADDRESSING SAME

Wyeth does not believe Walgreens' use of WAL-VERT is likely to cause confusion. Wyeth never objected to Walgreens' use of WAL-VERT, never demanded that Walgreens cease use of the mark, never sent Walgreens a cease and desist letter, and did not assert any infringement counterclaim in this Appeal. Instead, Wyeth opposed the WAL-VERT application due to concerns over the theoretical implications of a registration issuing for WAL-VERT. For example, what if Walgreens ceases use of the house mark "Walgreens" on the packaging for WAL-VERT? What if Walgreens begins selling WAL-VERT to other retailers, such that it will be offered outside the context of a Walgreens store? Won't Walgreens have the right to do these things if WAL-VERT registers? Will people then be confused? These are Wyeth's concerns.

**REDACTED**.

**REDACTED**.

Given this, if WAL-VERT is likely to create confusion among consumers, the Ever-Ready study would have revealed that. The new survey evidence to be offered by Walgreens establishes that even if consumers are exposed to the mark WAL-VERT for antihistamine/allergy relief medicines *completely outside* the context of a Walgreens house mark and/or a Walgreens store, they will not even think of ALAVERT, let alone be confused.

Also in the course of this civil action, Walgreens commissioned Dr. Ronald Butters to conduct an analysis as to whether WAL-VERT and ALAVERT are linguistically similar in appearance, sound, and meaning. Dr. Butters concluded they are not, and his study further supports Walgreens position.

A finding of likelihood of confusion requires that the extent of confusion be likely among an *appreciable number* of consumers, not just *possible*. *See DuPont*, 476 F.2d at 1360; *Rust*

*Env't & Infrastructure, Inc. v. Teunissen,* 131 F.3d 1210, 1219 (7th Cir. 1997). The studies commissioned by Walgreens will establish that any chance of consumers being confused between the parties' marks is no more than *de minimis* if it exists at all.

## V. CONCLUSION

This Court must reverse the TTAB if it finds there is no likelihood of confusion between WAL-VERT and ALAVERT. Application of the relevant factors, the expert studies commissioned by Walgreens, and common sense support the conclusion that people are not likely to be confused between the marks WAL-VERT and ALAVERT. This is the case regardless of whether WAL-VERT is accompanied by the house mark "Walgreens", or is sold in a Walgreens store.

Walgreens respectfully requests that this Court reverse the TTAB decision, dismiss the opposition with prejudice, and order the Trademark Office to issue a Notice of Allowance so the WAL-VERT application may proceed.

Dated: October 5, 2009

Respectfully submitted,

Tamara A. Miller

Mark J. Liss (Bar #6181002)
Tamara A. Miller (Bar #6237169)
Caroline L. Stevens (Bar #6274252)
LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza, Suite 4900
Chicago, IL 60601-6731
Tel: 312-616-5600
Fax: 312-616-5700
E-Mail: mliss@leydig.com

Attorneys for Plaintiff, Walgreen Co.